## JESSE WEAVER v. THE STATE.

### No. 2422. Decided December 4, 1901.

**1.—Murder—Evidence to Show Motive.**

On a trial for murder, it is competent for the State to prove, as going to show motive and intent on the part of defendant, that he, defendant, had for about two years before her marriage to deceased had illicit intercourse with deceased's wife; that she was pregnant by defendant at the time of her marriage to deceased, and that defendant was instrumental in bringing about such marriage.

**2.—Same—Remote Testimony.**

The fact that evidence tending to show motive on the part of defendant may be remote is no legal objection to its admissibility. Remoteness of acts may go to the probative force of, but is no reason for the exclusion per se of testimony.

**3.—Same—Evidence as to Motive.**

On a trial for murder it is competent, as going to show motive on the part of defendant, to prove, in connection with proof of defendant's illicit relations

with the wife of deceased and her pregnancy by defendant prior to her marriage to deceased, that defendant had attempted to procure medicine of a physician that would produce an abortion.

#### 4.—Murder—Tracks as Evidence.

On a trial for murder it is admissible to prove by a witness that, in his opinion, certain shoe tracks examined by him, and which were trailed by him from the place of the killing, corresponded with the boot of defendant which witness exhibited before and described to the jury.

#### 5.—Same.

On a trial for murder it is permissible to prove by a witness that several days after he had examined and tracked the shoe tracks from the place of the killing he went over the ground with other parties, one of whom was making a map of the locus in quo, and pointed out to said parties where the tracks were leading to and from the dead body.

#### 6.—Same.

Where the sheriff had testified to the peculiarity, etc., of certain shoe tracks examined and trailed by him from the place of the killing, and he had stated that he did not remember testifying as to the peculiarity of the tracks on a former trial, it was competent, in answer to a question by State's counsel, for him to state, "I don't know that that question was asked me, but my evidence was, that the track that led across the field was the same track at the tree at the body, that went up to the killing and back to the tree,—was the same track all the way through."

#### 7.—Murder—Evidence.

On a trial for murder where defendant had, on cross-examination of the sheriff, proved by him that he, the sheriff, knew that defendant had been or was going to be arrested before he, witness, had reached the place of the homicide, it was competent on re-examination to prove by said sheriff that before he went to the place he ordered defendant to be arrested on information he had received as to the conditions there.

#### 8.—Same.

On a trial for murder, it is error to permit the sheriff to testify that after he had arrested defendant and had warned him as to any statement he might make, he took defendant to the house where deceased's dead body was, and that defendant refused to go into the house and look at the dead body, although witness invited and demanded that he should do so.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant with the murder of Charley Martin, on the 12th day of April, 1899, by shooting him with a pistol.

The opinion states the facts.

*J. W. Stollenwerck, L. A. Carlton,* and *A. P. McKinnon,* for appellants, filed a most able and elaborate brief of forty-eight printed pages, and in addition thereto able printed arguments were separately filed each by Hon. L. A. Carlton and Hon. A. P. McKinnon. The reporter regrets that the want of space prevents the reproduction of the brief and arguments.

*J. E. Clark, C. F. Greenwood,* County Attorney, *W. C. Wear,* and *Rob't A. John,* Assistant Attorney-General, for the State. [No brief for the State is found with the record.—Reporter.]

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

The following summary of the facts adduced upon the trial is copied from appellant's brief: "Defendant, Jesse Weaver, and deceased, Charlie Martin, were brothers-in-law, having married sisters. Weaver married several years prior to the time that Martin married his wife's sister. At the time of the killing defendant lived about two and one-half miles from where deceased was then living. Martin was killed about dark on April 12, 1899, at a spring some 400 yards from his house, where he had gone to get water. The spring was in Richland Creek bottom, and was remote from any thoroughfare or publicly traveled road. The State proved by Mrs. Martin (wife of deceased) that before she married Martin she was in the habit of visiting defendant and his wife, who lived in the same settlement with her father, and while there on such visits she, from time to time, had sexual intercourse with the defendant; that she slept in the same room with her sister and defendant (her sister's husband), and that these acts of illicit intercourse occurred in this same room where they were all sleeping; that she finally became pregnant and defendant induced her to marry deceased, and was married to him on April 11, 1898, and gave birth to a child on October 7, 1898, which she said was Weaver's child. She testified that after her marriage she and her husband lived in the same house with defendant and her sister for about two weeks, and that even after the marriage defendant had intercourse with her. She also testified that these acts of intercourse took place between her and defendant while she was in bed with her newly-married husband; that after these two weeks she had never had any further sexual intercourse with defendant. She testified that she had been going with her husband some two or three months before her marriage to him; that she had become engaged to him about Christmas time before her marriage; that her husband never questioned the paternity of her child; that he had been continuously friendly with defendant until a few days before the homicide; that March 20th before the killing, she saw Jesse Weaver about half a mile from her house, down in the brush, and recognized him at this distance; that Weaver came to her house on Friday before the killing on Wednesday, and that her husband, Martin, told defendant to leave; that he told defendant not to speak to witness, and defendant replied that he would speak to her whether she spoke to him or not. She further testified that she had a father and nine brothers, and that the family were mad because of her marriage to Martin, and her testimony showed that they, or at least some of them, were at enmity with Weaver because of his having assisted in bringing about her marriage with Martin. Defendant was arrested about daylight on the morning of the killing the night before; this arrest having been made upon the order of the sheriff, and before the sheriff had gone upon the ground and made an investigation of the facts. Tom Bell, who was then sheriff of Hill County, testified

that he got upon the ground about daylight of the following morning after the killing, and that his deputies had arrested Weaver about the time he got there. Before he had seen Weaver, he went upon the ground; and he testified that he followed tracks from the scene of the homicide in the direction of Weaver's house, and to within about one-half mile of Weaver's home. He testified as to certain peculiarities of these tracks, one among them being that the track showed that the bottom tap on one of the heels had been cut lengthwise, and one-half of the same was gone; that he went to where Weaver was under arrest, and, with the permission of defendant, examined his boots, and found that the tap of one of them had been cut lengthwise and one-half of same was gone. He also testified that Weaver admitted having a pistol, and, upon the same being sent for, it was found to be a five-shooter, four barrels of which had been discharged. It was a 38-caliber pistol, and one of the balls which had been taken from Martin's body was a 38-caliber ball. Martin was shot four times. A number of people went with the sheriff while he was following these tracks, but he did not show this peculiarity to any of them, nor did any of them testify to having seen any such peculiarity about the track. Defendant denied having at any time improper relations with Mrs. Martin, and denied any knowledge of the killing, proving by his neighbors that he was in the field near his house as late as 5 o'clock on the evening of the homicide. * * * The killing occurred two and one-half or three miles from his home, and the evidence offered by him, if true, constituted an alibi."

By the first bill of exceptions appellant complains of the court permitting the State to prove by Mrs. Sarah Martin (wife of deceased) that she had illicit intercourse with defendant for about a year before her marriage, which relations continued during that length of time at intervals; that she was pregnant when she was married to deceased, and Weaver was the father of her child. About midnight defendant came to the house of witness' father, and took her in his buggy to Martin's, waked him and told witness she should marry Martin, and that the marriage was consummated. The court states in his explanation to the bill "that this evidence was introduced in connection with other evidence as tending to show motive for the killing; the theory of the State being that these relations continued until Friday before the homicide, at which time deceased, at the instance of the father of his wife, forbade defendant from coming to his house or speaking to his wife, and the killing occurred the next Wednesday." Appellant insists that said testimony is irrelevant and immaterial, and too remote from the time of the homicide; does not show a motive on the part of defendant; that, whatever may have been the relations existing between Sarah Martin and defendant, they ceased more than a year before the homicide. The fact that evidence tending to show motive may be remote is no legal objection to the admissibility of the testimony. It is always competent to prove acts, conduct, or declarations of defendant which tend to establish his knowledge or intent, though they constitute in law distinct crimes,

and are apparently collateral and foreign to the main issue, and may have occurred either prior or subsequent to the act for which defendant is being tried. Hubby v. State, 8 Texas Crim. App., 597; George v. State, 17 Texas Crim. App., 513. We held in Ex parte Mosby, 31 Texas Crim. Rep., 566, that defendant's adultery with the wife of deceased may be shown to establish his motive for the killing. And see also Spearman v. State, 34 Texas Crim. Rep., 279. Remoteness of the acts might go to the probative force of the testimony, but would not per se be a reason for excluding the same. If the previous acts, threats, or declarations of defendant go to illustrate, make manifest, or explain the purpose and object of the crime committed, then all of such previous acts, declarations, or crimes may be admitted in evidence to establish said motive and intent. Hall v. State, 31 Texas Crim. Rep., 565.

By the second bill appellant complains that the court permitted Dr. McLain to testify that defendant came to him during the year 1898, and prior to the marriage of deceased with defendant's sister-in-law, and desired medicine that would produce an abortion. This testimony was also germane and pertinent as going to establish the motive for the crime.

In the third bill of exceptions it is made to appear that the sheriff, Tom Bell, testified that he found tracks around the body of deceased, and at a tree some thirty or forty steps south of the body, which tracks appeared to have been made by a number 8 shoe, the heel of the shoe on the right side making a deeper impression than on the left, and one of the shoes seemed to be run over the sole; that he followed these tracks about two miles in the direction of where defendant lived, and within about half a mile of his home; that he measured the tracks, and compared this with the boots worn by defendant, and they corresponded. And the State asked the witness "whether or not the track that witness had followed up to the end of the lane was the same kind of a track that was down there at the spring and near the dead body," and witness replied "that the tracks at the end of the lane were the same kind of tracks as those found at the spring and near the dead body;" and in this connection Bell testified that the boot in his hand (being the boot defendant admitted he was wearing the day the homicide occurred) was the same boot that made the tracks he had followed from near the dead body to the end of the lane; and in this connection the boots were admitted in evidence before the jury, the witness Bell describing them in detail. Appellant objected to the admission of said boots in evidence; and their exhibition to the jury, because they were physical objects described by the witness; that the verbal description of these objects were the only proper evidence; that said boots so admitted in evidence could not be incorporated in the record on appeal. And appellant objected to the statements made by witness Bell as to his opinion or impressions as to the tracks at the end of the lane being similar to those found at the spring. And appellant objected to Bell testifying, with the boot in his hand, that, in his opinion, that boot,

which was the boot defendant had worn on the day of the homicide, was the boot that made the tracks he had followed from near the dead body. We have repeatedly held this character of testimony is admissible. The witness may express his opinion as to the correspondence of tracks found by him with the boots or shoes worn by the accused. Clark v. State, 28 Texas Crim. App., 189; Rippey v. State, 29 Texas Crim. App., 37; McLain v. State, 30 Texas Crim. App., 482.

The fourth bill complains that Bell was permitted to testify that, after he had examined and followed the tracks as set out in the preceding bill, that several days afterwards he went over the ground again with Stevens, Collins, and West, and showed them where the tracks were made leading to and from the dead body. Appellant objected, because it was immaterial and irrelevant; it was not the statement of any fact tending to show defendant killed deceased; that it was an effort on the part of the State to corroborate the witness by stating he had shown to others what he claimed to have seen himself. The court appends the following explanation to this bill: "That the witness Stevens was on the ground not only to examine the tracks, but to make a map of the country traversed by the tracks, which he did, and the map was introduced in evidence. Just how he or anyone else could make a map of the course, the tracks on the ground, and of the country over which they passed without seeing the tracks and the country is a problem I can't solve," etc. We can not see that there is any legal objection to the introduction of this testimony. It appears that witness Stevens made a map of the ground where the homicide occurred, showing the relative position of the tracks, of the tree under which the assassin is said to have stood, the place where deceased fell, the spring, and the tracks from there to the body of deceased, and the surrounding natural objects. This could not have been done as indicated by the court in his explanation, without the witness knowing the objects pointed out by the witness Bell.

The fifth bill of exceptions shows that appellant objected to the following: That after the witness had stated the peculiarities of the tracks found at the tree near the body, appellant asked him if he had testified to these peculiarities on the former trial, and the witness answered that he could not remember; and the State's counsel was then permitted to ask, "Now, then, what did you say on the former trial as to whether these tracks that led out across the field were the same tracks that you found there at the tree?" to which the witness answered, over appellant's objections, "I don't know that that question was asked me, but my evidence was that the tracks that led across the field was the same track at the tree and at the body, that went up to the killing and back to the tree,—was the same track all the way through." We think this testimony was admissible.

In bill number 6 appellant complains that the court permitted the witness Tom Bell to testify that he was sheriff of Hill County, and before he had investigated the facts, and before he went upon the ground where

the homicide occurred, he ordered defendant arrested on the information he received as to the conditions there. Appellant objected on the ground that the same was immaterial, irrelevant, and that it tended to indicate to the jury that the sheriff had a suspicion that defendant was guilty of the murder of deceased; that the fact of defendant being under arrest was not evidence of his guilt and the statement that he had been arrested upon orders from the witness was not in explanation of or in elucidation of any act done or fact testified to by the witnesses. The court appends this explanation to the bill: "Before the answer was admitted, counsel for defendant had proved by this witness Bell that he knew defendant had been or was going to be arrested before he (Bell) reached the place of the homicide, and before he had examined any tracks. Thereupon the court permitted the witness, on re-examination by the State, to give the answer complained of in this bill, and then permitted defendant to show by witness Bell, and the man to whom he had phoned the order of arrest, just what occurred, and to show that defendant was not arrested on concealed and undisclosed information," etc. Under this explanation, we think, the testimony was admissible.

Appellant's seventh bill complains that after it had been shown by witness Bell that defendant had been arrested early in the morning on the day after the homicide and had been continuously under arrest, and was under arrest at the time of these occurrences, the witness Bell, over appellant's objection, testified: "Q. State whether you were at Martin's house, where the dead body was, when Weaver was brought there. A. Yes, sir. Q. Did Weaver come in the house. A. No, sir. Q. Do you know why? A. He refused to go in the house. I invited him to see the body,—asked him and demanded him." The witness had previously testified that he had warned defendant in the terms of the statute, and defendant on the stand admitted he had been warned. As to the warning the witness testified: "Q. After you got over there, did you have a conversation with defendant? A. I did. Q. Did you caution him? A. I did. I told him that I wanted to talk to him about the murder,—about Charlie Martin,—and would like for him to make a statement; but any statement that he would make would be used as evidence against him, and could not and would not be used as evidence for him, and all that I wanted was the truth, and nothing but the truth." Appellant objected to this proceeding because at the time defendant was under arrest; that it was immaterial, irrelevant, and improper; and that his failure or refusal to go in the house and look upon the dead body of Martin was not competent evidence against him, under the conditions set out; that the same was prejudicial to defendant, as it tended to indicate to the jury that defendant was conscious of guilt, and was susceptible of the interpretation that defendant was afraid to look upon the body of the dead man. The court appends this explanation to the bill: "That before this answer was permitted defendant had proved that the wife

of deceased had a father and nine brothers, who lived in the neighborhood, and that George Slate, one of the brothers, at the time of the marriage of deceased and his sister was very much enraged, and had made threats against deceased; and, further, that none of these brothers or father had attended the inquest, or viewed the body of deceased. Thereupon the court permitted the evidence complained of." In Gardner v. State (Texas Criminal Appeals), 34 Southwestern Reporter, 945; Funderburk v. State, 2 Texas Court Reporter, 68; Denton v. State, 42 Texas Criminal Reports, 427, 1 Texas Court Reporter, 567, we held that where a person is in custody for a crime his silence can not be used against him as a confession of the truth of the statements made in his presence, whether he was cautioned as required by the statute or not. The bill shows that Bell cautioned appellant that any statement he might make could be used against him, but not for him, as required by the statute. Thereupon he invited appellant to look upon the body of the deceased. This he refused. Can such refusal be used as a circumstance against defendant? Clearly not. If so, then any refusal to answer questions or to comply with any request made by the sheriff after receiving the statutory warning could be used as a criminative fact against him. We do not think the rule authorizing the introduction of appellant's statement while under arrest can be given the latitude shown by this bill of exceptions. If so, then, as stated, the sheriff could be permitted to testify to any character of denial or refusal the defendant might make as a criminative fact against him. We do not think this testimony was admissible, and the court erred in permitting the sheriff to testify as indicated.

Appellant also contends that the evidence is insufficient to support the verdict. In view of another trial, we do not feel called upon to pass on this question. We have reviewed the other assignments of error, but do not think any of them are well taken.

For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.