STATE of North Dakota, Plaintiff and Respondent,

v.

Samuel F. SEVERSON, Defendant and Appellant.

Cr. No. 262.

Supreme Court of North Dakota.

Feb. 17, 1956.

Lyle Huseby, Fargo, for appellant.

Paul Benson, Atty. Gen., Bismarck, Lee F. Brooks, State's Atty., and C. J. Serkland, Asst. State's Atty., Fargo, for respondent.

BURKE, Chief Justice.

Defendant was convicted in the County Court of Increased Jurisdiction of Cass County of the crime of driving a motor vehicle while under the influence of intoxicating liquor. He has appealed from the judgment of conviction. Upon this appeal there are two specifications of error: (1) That the trial court erred in admitting in evidence, over objection, testimony that the defendant immediately after his arrest had refused to take a blood test for the purpose of ascertaining the percentage of alcoholic content in his blood; and (2), That the trial court erred in directing that the proceedings and testimony on the trial be recorded by means of a mechanical or magnetic recording machine instead of having the record made by a court reporter or stenographer.

In support of his contentions upon the first specification the defendant relies upon Section 39–0801, 1953 Supp. NDRC 1943. This section provides for admission in evidence, in criminal cases where the charge against the defendant is "driving a motor vehicle while under the influence of intoxicating liquor", testimony as to the results of a chemical test showing the concentration of alcohol in the defendant's blood at the time of his arrest. It provides that certain presumptions, based upon different percentages of alcoholic content, shall follow from the testimony. It also provides: "No defendant shall be required to submit to any chemical test without his consent."

Defendant argues that this statute in granting to a defendant protection against an involuntary test implies both that the results of an involuntary test, and that where defendant does not testify, the refusal to take a test may not be received in evidence against him. We have no doubt whatever but that this statute clearly implies that evidence of the results of such a test may not be received in evidence unless the defendant consented to the test. We think the legislative purpose in granting a defendant protection against an involuntary test was to prevent the giving of evidence as to the contents of his bodily fluids, unless he had consented to their examination. If the statute were not so construed the protection granted would be but an empty privilege to violation by aggressive and overly

zealous officers, who might be tempted to secure bodily fluids for examination by trickery or force.

Whether the statute implies that evidence of a refusal to take a test may be not received in evidence against a defendant is a question that is not without difficulty. We are of the opinion, however, that when the legislature granted an accused person a choice of whether he would submit to such a test, it intended that the choice should be absolutely free and not encumbered by a liability. If the fact that an accused person chooses not to take a test can be put in evidence and argued to the jury as evidence of guilt, then the statute places the defendant in a position where willy-nilly, he must risk providing evidence for the prosecution by submitting to a test or certainly provide it by refusing to take one, although his reason for refusal may have no relation to the question of guilt or innocence. We do not think the legislature intended this result in a situation where the defendant has not testified. This conclusion is in harmony with the spirit of the criminal law as administered in this state. Here we have expressly provided by statute that "neglect or refusal [of defendant] to testify shall not create or raise any presumption of guilt against him. Nor shall such neglect or refusal be referred to by any attorney prosecuting the case, or considered by the court or jury before whom the trial takes place." Section 29–2111, NDRC 1943. Thus the policy of our law appears to be that a defendant may claim a privilege granted by statute or the constitution, without being subjected to the liability that his exercise of the right may be used against him.

We are aware that courts in other jurisdictions have reached a different conclusion. State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265; State v. Nutt, 78 Ohio App. 336, 65 N.E.2d 675; State v. Benson, 230 Iowa 1168, 300 N.W. 275. In the Ohio cases the basis of the decisions was that the constitutional privilege against self-incrimination relates only to disclosure by utterance and that since the results of a test of defendant's bodily fluids would be competent evidence even though a defendant did not consent to the examination, evidence of the fact that he refused to take an examination is also competent. It is apparent that these decisions can have no weight in this state. Here we are not concerned directly with the general constitutional guaranty against self-incrimination. Our statute expressly and specifically grants protection against an involuntary chemical test. The protection is granted by statute, and whether it may also be included in the general privileges granted by the constitution is not material in this case. If as is intimated by the Ohio cases, the competency of evidence of a refusal to take a test is dependent upon the absence of a right to refuse, these decisions are authority for the position we have taken here.

In the Iowa case the decision is founded upon the analogy the court finds between the refusal of a defendant to submit to a chemical test and his failure or refusal to take the witness stand in his own defense. It points out that in Iowa, the failure of a defendant to testify may be commented on and argued to the jury and from this premise concludes that it is also proper to offer testimony of a refusal to take an examination, and argue the refusal to the jury as evidence of guilt. If the analogy found to exist by the Iowa court is a true analogy, the reasoning of the court would lead to an entirely different conclusion if applied in this state, because here the failure of a defendant to testify may not be commented on at all. We are satisfied therefore that the admission of evidence of defendant's refusal to submit to a chemical examination was prejudicial error.

While this conclusion requires that the defendant be granted a new trial we will nevertheless consider the second specification of error because of the importance of the procedural question raised. The question is, may a machine be substituted for a court reporter or stenographer as a means of making a record of the proceedings and the testimony upon the trial of a criminal case in the county court of increased jurisdiction.

Section 27–0824, NDRC 1943, provides that the provisions of law and rules of practice applicable to district courts in civil and criminal actions shall apply to county courts with increased jurisdiction. Section 27–0601, NDRC 1943, provides that each judge of the district court may appoint a court reporter or some suitable person to act in his place if the reporter is incapacitated from acting. Section 27–0818, NDRC 1943, provides that each judge of county court of increased jurisdiction may appoint a court reporter but that in counties having a population of less than 8,000 inhabitants, such appointment must be authorized by the board of county commissioners. Section 27–0603, NDRC 1943, provides that court reporters shall take in shorthand all testimony and proceedings upon the trial of a case in district court. Section 27–0604, NDRC 1943, provides that the original shorthand notes shall be filed in the office of the clerk of court. Sections 27–0605 and 27–0607, NDRC 1943, relate to the preparation of transcripts of the shorthand minutes. These statutes provide that the reporter shall prepare such a transcript whenever requested to do so by a party to a proceeding, upon payment of his fees as required by statute. Sections 27–0601 and 27–0607, NDRC 1943, provide that if the transcript is prepared by a suitable person acting in a reporter's stead or by a reporter acting after his term of office has expired, the transcript shall be certified under oath.

Upon a consideration of all these statutes, we have concluded that a party to a litigated case in either the district court or a county court of increased jurisdiction has a statutory right to have the proceedings upon the trial taken down by a reporter or some suitable person acting by appointment of the judge of the court and to have a transcript of the proceedings certified as provided by statute. We are not concerned with the relative merits of different methods of recording the proceedings upon a trial. The procedure prescribed by the legislature should be followed until such time as it authorizes a different one. We do not pass upon the question of whether the use of the magnetic recording device was prejudicial to the defendant in this case or whether he waived his right to a reporter or stenographer, because the resolving of these questions is unnecessary to a decision herein.

The judgment of the county court is reversed and a new trial granted.

MORRIS, SATHRE, JOHNSON, and GRIMSON, JJ., concur.