CITY OF BROOKINGS, Respondent v. JENSEN, Appellant

(243 N.W.2d 71)

(File No. 11594. Opinion filed June 15, 1976)

**Ronald C. Aho**, Brookings, for plaintiff and respondent.

**Gunderson & Gunderson**, Clear Lake, for defendant and appellant.

COLER, Justice.

Appellant was found guilty by a jury and convicted of driving while intoxicated in contravention of an ordinance of the City of Brookings. We reverse.

Appellant was arrested at approximately 2:13 a.m. on March 29, 1973. The first appeal, #11393, was dismissed as no final judgment of conviction had yet been entered. Subsequently, on November 25, 1974, the judgment of conviction and sentence was entered and the appeal was allowed.

Appellant's assignments of error involve the trial court's (1) refusing to grant appellant's motion that no evidence in respect to appellant's refusal to take a breathalyzer test be admitted either in the opening statement or in the trial itself and (2) allowing two city patrolmen to testify that appellant refused to take a breathalyzer test.

Appellant was observed in the early morning hours by a city patrolman driving alone in his pickup truck going north on Western Avenue and making a stop at the intersection of Western Avenue and Sixth Street which is designated as U.S. Highway 14. The officer observed the pickup making too wide a turn to the west on Highway 14 to the extent that the vehicle momentarily went off the shoulder of the road. The officer followed the vehicle and observed it swerving to some degree though remaining on the proper side of the roadway and turned on his warning light. Although there is conflicting testimony, the officer blew his siren and finally stopped appellant after they had traveled approximately one mile westerly on Highway 14. The officer testified as to his observance of appellant's breath as smelling of alcohol and as to the actions of appellant which brought about the officer's asking appellant to take a field sobriety test which the officer felt appellant failed. Just as the officer finished the field test, another officer arrived on the scene and thereafter appellant was arrested and taken back to the police station. A third

officer, Officer Tietjen, who had had courses of training in the operation of a breathalyzer, was called to the police station and he explained the breathalyzer to appellant.

At the commencement of the trial, after the prosecutor had alluded to appellant's refusal to take a breathalyzer test in his opening argument, appellant objected to the statement and moved the court to suppress testimony relative to the refusal to take a test. That motion was denied.

It appears from the record that appellant was afforded the opportunity to talk to his lawyer and from the following testimony received at the trial, over appellant's objection, the circumstances upon which appellant's refusal to take the test are evidenced. Officer Tietjen testified that he asked appellant if appellant would voluntarily consent to taking this test. The city attorney asked "What was his response, if you recall?" Appellant's objection was overruled as was his earlier motion. Thereafter, under questioning of Officer Tietjen by the city attorney the following appears in the record:

"A   He asked me what would happen if I don't.

Q   What was your response?

A   I said, 'Nothing.'

Q   What was his response to your statement then?

A   'I would rather not take it then.'

Q   Did you have any further conversation with the defendant at this time?

A   I might have mentioned that South Dakota did not have the complied [sic] consent law, which is why I gave him the answer 'nothing.'

Q   What did you notice about the defendant as you explained to him about the machine?

A    He didn't say too much except that 'no, I don't care to' or 'I would rather not.' "

Earlier in the trial, again over the objection of appellant, the arresting officer, Dennis Falken, was also allowed to testify that appellant had refused to take the breathalyzer test.

■ The statement of Officer Tietjen to the effect that there was no implied consent law was an obvious reference to the decision of Holland v. Parker, 1973, 8 Cir., 354 F.Supp. 196, which brought about the emergency enactment of Chapter 195 of the Session Laws of 1973. This act became effective, as an emergency measure, upon the signature of the governor on March 27, 1973, two days before the arrest of appellant so in fact there was at the time of arrest an implied consent law. As the foregoing testimony indicates, appellant was not advised of his rights under SDCL 32-23-10.

Appellant contends that comment on appellant's refusal to take the breathalyzer test is violative of both Article 5 of the amendments to the U.S. Constitution and Section 9 of Article VI of the South Dakota Constitution. Because of our holding that State v. Oswald, 90 S.D. 342, 241 N.W.2d 566, controls we need not and do not reach the constitutional issue.

Respondent would ask this court to find the holding of this court in City of Sioux Falls v. Johnson, 1960, 78 S.D. 272, 100 N.W.2d 750, as controlling. While it is true that in both Sioux Falls v. Johnson, supra, and in this case defendant actually took the stand, the Johnson case is distinguishable in that in that case defendant denied that a test had been offered and the evidence of his refusal was adduced for impeachment purposes in the course of cross-examination and for that purpose the evidence was held to be admissible. In this case the fact of his refusal was introduced before appellant took the stand and, indeed, the court ruled that it was admissible before evidence had been introduced in the trial.

The issue of whether the provisions of SDC 1960 Supp., § 44.0302-1, now SDCL 32-23-7 and 32-23-8, applied to municipal ordinance violations was not reached in City of Sioux Falls v.

Johnson, supra, but that issue subsequently arose in City of Sioux Falls v. Christensen, 1962, 79 S.D. 633, 116 N.W.2d 389, and this court answered that those provisions were not applicable to municipal ordinance violations. Thereafter, the legislature enacted Chapter 122 of the Session Laws of 1964 which at the time of this proceeding was codified as SDCL 32-23-9 and is set forth as follows:

"32-23-9. The provisions of §§ 32-23-7 and 32-23-8 shall be applicable in any action for the violation of a municipal ordinance relating to driving a vehicle while under the influence of intoxicating liquor."[1]

The reference in that section to SDCL 32-23-7 and 32-23-8 which define the levels of weight of alcohol in defendant's blood for the purposes of giving rise to a presumption of intoxication and the competency of evidence other than the blood test, respectively, did not in express terms of SDCL 32-23-9 make the then existing provisions of. SDCL 32-23-10 apply to municipal ordinance violations. The language of SDCL 32-23-10, as last amended by Section 12 of Chapter 195 of the Session Laws of 1973, reads as follows:

"32-23-10. Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32-23-7, provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of § 32-23-1.

"Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the provisions of §§ 32-23-11 and 32-23-12 in the event of such refusal with respect to the revocation of such per-

1. This section was repealed by Chapter 76 of the Session Laws of 1974 and together with other amendments to the statutes abolished the authority of municipalities to enact or enforce driving while intoxicated ordinances effective January 7, 1975, at 12:01 p.m. central time.

son's driving license." (Emphasis supplied)

■ Making reference as it does, and as it did prior to its amendment in 1973, to the provisions of SDCL 32-23-7 necessarily makes SDCL 32-23-10 applicable to the city ordinance violations under the then existing provisions of SDCL 32-23-9. Otherwise the municipality would not have the benefit of the implied consent law and presumptions which were afforded for their prosecutions under SDCL 32-23-9.[2] Clearly, such must have been the legislative intent and to give meaning to the law we so hold.

We hold, therefore, that the then existing right of a municipality to require a chemical analysis of blood for the purposes of its ordinances prohibiting driving while intoxicated was governed by the same statutes as were state charges for the same offense and that "it is unfair to create by statute a right not to submit to a chemical test and to allow the accused to exercise that right and then in open court before a jury to permit testimony concerning that refusal which can all too easily work in the minds of the jury members to the prejudice of the defendant." State v. Oswald, supra. The admission of evidence of appellant's refusal was reversible error. State v. Oswald, supra.

The judgment of conviction is reversed.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.

---

2.  It is obvious that the trial court came to the same conclusion as evidenced by Instruction No. 9 as set forth as follows:
    "9
    Evidence has been introduced that the defendant was offered a breathalyzer test to determine the alcoholic content of his blood, and that he refused to take such test.
    You are instructed that this was a right that the defendant had, and that you are not to give rise to any inference from his refusal to take such test that he is guilty of the offense charged."
    The instruction does not overcome the error of having allowed the evidence to be introduced.