**Kenneth Wayne DUDLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 50448.**

Court of Criminal Appeals of Texas.

March 23, 1977.

Rehearing Denied April 13, 1977.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Marshall M. Arnold, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., for the State.

OPINION

PHILLIPS, Judge.

Appellant was convicted of the offense of driving while intoxicated, and his punishment was assessed at a fine of $100.00 and 30 days in jail. The jail term was probated for two years.

■ Appellant's sole contention on appeal is that the court reversibly erred in permitting the State, over appellant's objection, to elicit testimony before the jury that appellant had been offered and had refused to take a breath test.

It is the State's contention that *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *Olson v. State*, Tex.Cr.App., 484 S.W.2d 756, render said testimony now admissible in Texas, notwithstanding our unbroken line of decisions contrary thereto, notably, *Willeford v. State*, Tex.Cr.App., 489 S.W.2d 292; *Shilling v. State*, Tex.Cr.App., 434 S.W.2d 674; *Saunders v. State*, 172 Tex.Cr.R. 17, 353 S.W.2d 419; *Brown v. State*, 165 Tex.Cr.R. 535, 309 S.W.2d 452; *Jordan v. State*, 163 Tex.Cr.R. 287, 290 S.W.2d 666; *Bumpass v. State*, 160 Tex.Cr.R. 423, 271 S.W.2d 953; *Cardwell v. State*, 156 Tex.Cr.R. 457, 243 S.W.2d 702. In *Schmerber* the Supreme Court of the United States simply held that under the narrowed facts of that particular case proof of the *results* of a blood test, where the blood had been drawn by a physician in a hospital in excess of two hours after an accident involving the defendant, was admissible though the defendant had not consented thereto. *Olson v. State*, supra, merely held that the prohibition of the Texas Constitution against the compelling of the defendant to *give evidence against himself* means the same as the prohibition in the federal constitution against compelling a defendant to *be a witness against himself*. Olson involved only the question of whether a handwriting sample voluntarily given by the defendant was rendered inadmissible because the defendant was under arrest and without counsel. The Court's statement in said opinion pertaining to the blood test was dicta and the Court in said case did not consider, by dicta or otherwise, the question of admissibility of defendant's refusal to take a breathalyzer test or any other chemical test.

*Schmerber* is not authority for the contention of the State herein, but is strong authority to the contrary. In *Schmerber* the Supreme Court gave as its reason for holding the results of said blood test beyond the scope of the Fifth Amendment the fact that such was merely a then existing physical characteristic of the defendant and "not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved." *Schmerber* at page 765 of 384 U.S., at page 1832 of 86 S.Ct. We interpret the majority opinion in said case in footnote nine to the above quoted statement to say general Fifth Amendment principles including *Miranda* requirements would apply as to proof of any refusal to take a breathalyzer test.

In said opinion the Court stated:
"We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications."

It is stated in 8 Wigmore, Evidence, Sec. 2265 (McNaughton rev. 1961):
". . . Unless some attempt is made to secure a communication—written, oral or otherwise—upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one . . . ."

■ Conversely, if a communication, written, oral, or *otherwise,* involves an accused's consciousness of the facts and the operations of his mind in expressing it, such is testimonial and communicative in nature. A defendant's silence or negative reply to a demand or request by an officer made upon him while under the necessary compulsion attendant with custodial arrest, which demand or question reasonably calls for an immediate reply by the defendant, is clearly a tacit or overt expression and communication of the defendant's thoughts in regard thereto, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The obvious purpose and certain result of proving a

person accused of intoxication refused a request to take a breathalyzer test is to show the jury that the accused, with his full knowledge of the true amount he had consumed, thought that he could not afford to take said test. Such was the only reason for its relevancy. Thus, said evidence is without doubt of communicative and testimonial character and not mere factual proof of a then existing physical characteristic. The contention that if the result of the test is admissible that an accused person's expression of his desire not to submit to said test must also be admissible, is directly contrary to the reasoning of *Schmerber*. This is so because the Constitution simply forbids any compulsory revealing or communication of an accused person's thoughts or mental processes, whether it is by acts, failure to act, words spoken or failure to speak, and the fact that it does not extend its scope further and forbid compulsory exhibition of physical characteristics does not nullify the extent to which it has extended its protection to an accused.

It has been contended that the appellant's refusal to submit to a chemical test is the same as flight or escape, but the distinction lies in the fact that escape and flight are not compelled or even requested by the State; whereas, if an accused under custodial arrest is requested or offered a chemical test for intoxication, anything he does other than affirmatively agree to same is a refusal to submit. Thus, escape and flight are not *"compelled"*, a necessary factor under the Fifth Amendment, but a refusal to take a chemical test by silence or negative reply to a State's request or offer is *compelled*.

Art. 38.22, V.A.C.C.P. has been consistently construed by this Court as prohibiting proof of an accused's oral statements, silence or acts, if made while under arrest and tending to communicate thoughts of the defendant which are of an incriminating nature. *Garner v. State,* Tex.Cr.App., 464 S.W.2d 111; *Butler v. State,* Tex.Cr. App., 493 S.W.2d 190; *Hubbard v. State,* 153 Tex.Cr.R. 143, 217 S.W.2d 1019; *Brent v. State,* 89 Tex.Cr.R. 544, 232 S.W. 845.

Though not expressly stated heretofore, the decisions construing Art. 38.22, supra, reveal that, in practical application, said statute has been held to prohibit any act, silence or oral statement of an accused while in custody which has communicative or testimonial characteristics, substantially the same as the Fifth Amendment.

Therefore, appellant's objection in the trial court to said testimony upon the grounds of Art. 38.22, supra, as well as the Fifth and Fourteenth Amendments to the Constitution of the United States, should have been sustained and the failure of the trial court to do so was error prejudicial to the rights of the appellant.

Art. 6701*l*–5, V.A.C.S., does not purport to apply to the question here presented in that same addresses itself to the question of admissibility of the *results* of a chemical test, but not to an accused's *refusal to submit to same* at the request of an officer while under custodial arrest.

For the error stated, the judgment is reversed and the cause remanded.

ONION, Presiding Judge, concurring.

This appeal presents for reconsideration the question of whether the State may initially elicit from the arresting officer or others the fact that the accused has been offered and refused to take a *breath test* to determine intoxication. The State urges that reconsideration is long overdue in light of *Olson v. State,* 484 S.W.2d 756 (Tex.Cr. App.1972), which overruled *Trammell v. State,* 162 Tex.Cr.R. 543, 287 S.W.2d 487 (1956). There are, however, several bases for either the admission or exclusion of such evidence that should be discussed.

The conviction in the instant case is for driving a motor vehicle upon a public highway while intoxicated. The offense was shown to have occurred on June 8, 1974. Punishment was assessed at thirty (30) days in the county jail and at a fine of $100.00. The jail term was probated under Article 42.13, Vernon's Ann.C.C.P.

At the trial the State in its case in chief on direct examination elicited, over proper

objection, from the arresting officer that the appellant had been offered and had *verbally* refused to take a breath test, and still later on cross-examination inquired of the appellant about the same matter.

The only ground of error urged by the appellant is that the trial court erred in admitting such evidence over objection.

### The Cardwell Case, Article 38.22, V.A.C.C.P., Etc.

Appellant relies upon *Cardwell v. State,* 156 Tex.Cr.R. 457, 243 S.W.2d 702 (1951), and a line of cases following it which hold such evidence of refusal inadmissible.

The State urges that this court take this opportunity to overrule the *Cardwell* line of cases in light of the holding in *Olson v. State,* supra. In holding admissible handwriting exemplars, *Olson* held that the scope of the privilege against self-incrimination in Article I, § 10, Texas Constitution, is identical to that of the Fifth Amendment, United States Constitution, and that state constitutional provision affords the same but no greater rights than the federal constitutional provision.[1] *Olson* overruled several cases, including *Trammell v. State,* supra, which had held that the self-incrimination privilege of the State Constitution prohibited the admission into evidence of the results of a blood test conducted without an accused's consent. *Olson* made clear that there was no state constitutional barrier to subjecting an accused, without his consent, to a chemical test for intoxication, if taken under conditions which comport with due process. In effect it made *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), applicable to Texas.

In *Schmerber v. California,* supra, the United States Supreme Court held admissible the evidence of the results of a test for blood alcohol content made upon a blood sample drawn from a defendant without his consent. The Court reasoned that the Fifth Amendment extends only to testimonial communications from a defendant, not to real or physical evidence. The Court concluded, "Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."

The *Schmerber* case, however, emphasized that it was not deciding whether the admission of an accused's verbal refusal to submit to chemical testing would violate any of the accused's constitutional rights, including the Fifth Amendment. In fact, it warned that the State may well have to forego evidence of testimonial byproduct of compelling an accused to submit to chemical testing. 384 U.S. at p. 765, note 9, 86 S.Ct. at p. 1833.

The State thus contends that since *Schmerber* is now applicable to Texas and consent is no longer required to subject a defendant to a blood or breath test, etc., his refusal to take such test should be admissible in evidence, particularly in light of the overruling of *Trammell.* While the holding in *Trammell* was consistent with the rule that testimony cannot be introduced or comment made on an accused's refusal to take a blood test, see *Olson v. State,* supra, footnote # 48 at p. 772, it is interesting to note that *Cardwell v. State,* supra, and its progeny have never relied upon *Trammell* and its progeny.

Since *Trammell* or the line of cases which followed it were never the basis for any of this court's decisions prohibiting the State from producing evidence of the accused's refusal to take a sobriety test, the State's reliance on *Trammell* is misplaced.[2]

1. In *Olson* the defendant argued that the court had improperly admitted his handwriting exemplars into evidence in violation of Article I, § 10, Texas Constitution, which he claimed was broader in scope than the Fifth Amendment. Among the cases cited in support of the contention that the state constitutional provision had been given a broader interpretation was

*Trammell v. State,* 162 Tex.Cr.R. 543, 287 S.W.2d 487 (1956).

2. *Olson,* in overruling *Trammell,* held that the Texas constitutional self-incrimination privilege extends its protection only to testimonial compulsion, thus compelling, for example, a blood test, if taken under conditions which comport

In *Cardwell* the court, speaking through Judge Woodley, wrote:

"The State cannot avail itself of the silence or refusal of an accused prisoner as a circumstance tending to establish his guilt."

The opinion did not further discuss the holding, but cited three cases, *Carter v. State,* 23 Tex.App. 508, 5 S.W. 128 (1887); *Elliott v. State,* 152 Tex.Cr.R. 285, 213 S.W.2d 833 (1948); *Sharp v. State,* 153 Tex. Cr.R. 96, 217 S.W.2d 1017 (1949), none of which involved testimony of a refusal to take a chemical test.[3]

The cases after *Cardwell* almost invariably cite either *Cardwell* or the opinions which followed it, without a discussion or mention of the confession statute or the rule of evidence discussed. See *Bumpass v. State,* 160 Tex.Cr.R. 423, 271 S.W.2d 953 (1954); *Jordan v. State,* 163 Tex.Cr.R. 287, 290 S.W.2d 666 (1956); *White v. State,* 164 Tex.Cr.R. 416, 299 S.W.2d 151 (1957); *Brown v. State,* 165 Tex.Cr.R. 535, 309 S.W.2d 452 (1958); *Watts v. State,* 167 Tex. Cr.R. 63, 318 S.W.2d 77 (1958); *Saunders v. State,* 172 Tex.Cr.R. 17, 353 S.W.2d 419 (1962); *Shilling v. State,* 434 S.W.2d 674 (Tex.Cr.App.1968); *Willeford v. State,* 489 S.W.2d 292 (Tex.Cr.App.1973). Cf. *Sublett v. State,* 158 Tex.Cr.R. 627, 258 S.W.2d 336 (1953). The rule announced in *Cardwell* has been consistently applied where the State initially elicits such testimony. The rule is

recognized but not applied where the defendant brings out such testimony or "opens the door" to such testimony being elicited by the State. See, e. g., *Hopkins v. State,* 162 Tex.Cr.R. 103, 282 S.W.2d 232 (1955); *Strickland v. State,* 169 Tex.Cr.R. 633, 336 S.W.2d 185 (1960); *Radosevich v. State,* 171 Tex.Cr.R. 333, 350 S.W.2d 198 (1961); *Lee v. State,* 170 Tex.Cr.R. 566, 342 S.W.2d 753 (1961); *Turner v. State,* 371 S.W.2d 891 (Tex.Cr.App.1963); *Wright v. State,* 396 S.W.2d 127 (Tex.Cr.App.1965); *Polk v. State,* 490 S.W.2d 853 (Tex.Cr.App. 1973); *Nichols v. State,* 504 S.W.2d 462 (Tex.Cr.App.1974); *Birdwell v. State,* 510 S.W.2d 347 (Tex.Cr.App.1974). Cf. *Story v. State,* 502 S.W.2d 764 (Tex.Cr.App.1973).

*Shilling v. State,* supra, was the first case which reversed a conviction for violation of the *Cardwell* rule after the effective date of the new Code of Criminal Procedure (January 1, 1966), which included Article 38.22, Vernon's Ann.C.C.P., as the confession statute and after the decision in *Schmerber v. California,* supra. *Cardwell* and *Bumpass* were cited with approval, but the new confession statute was not mentioned.

In *Willeford v. State,* supra, decided after *Schmerber* and *Olson,* the court reversed for the introduction of that portion of the arresting officer's report relating to the defendant's refusal to take a blood test, although the other portion of the report was admissible under Article 38.24, Vernon's Ann.C.C.P. No mention was made of

---

with due process, does not constitute requiring an accused to "give evidence against himself." Although there is no longer any state constitutional requirement that a person consent to a blood, breath or urine test to determine intoxication, attention must be given to Article 6701*l*–5, Vernon's Ann.C.S. (former Article 802f, Vernon's Ann.P.C.), which provides for the implied consent of motorists for the taking of a breath test, but provides that in the taking of all other chemical tests to determine alcoholic content of his blood there is no implied consent though the motorist "may consent." The Attorney General in Opinion H–736 (Nov. 13, 1975) recognized there was no constitutional limitation, but held the statute above described prohibited a blood sample being taken from a person suspected of a traffic related offense without the consent of such person.

**3.** In *Carter* evidence was introduced that after arrest the defendant refused to divulge his name. Citing the confession statute then in effect, Article 750, C.C.P., 1879, the conviction was reversed. In *Elliott v. State,* supra, the defendant made an oral confession he had stolen the cattle prior to being warned as required by the confession statute (Article 727, Vernon's Ann.C.C.P., 1925). The conviction was set aside. *Sharp* involved both a refusal to answer an officer's question as to whether the defendant was intoxicated and a later statement that he was intoxicated. The case was reversed both on the confession statute (Article 727, Vernon's Ann.C.C.P., 1925) and the rule of evidence that prohibits admission by silence.

either *Schmerber* or *Olson*.[4] The only authority cited was *"Cf Lee v. State,* 170 Tex.Cr.R. 566, 342 S.W.2d 735 [753]."

It is clear from the above that this court's decisions prohibiting the State from eliciting testimony concerning an accused's refusal to take a sobriety test have rested upon the confession statute as well as the rule of evidence which forbids an accused's silence to be used against him as tending to establish guilt. In the instant case it appears from the record that the appellant *verbally* refused to take the breath test, and it was this refusal which the State elicited over objection. The present confession statute, Article 38.22, supra, 1967, as amended, has recently been interpreted, as its forerunners were, as designed to prevent the prosecution from using against the accused the testimony of the officer having him under arrest as to a verbal statement made by the accused which the State seeks to use to prove his guilt, even if that statement does not in and of itself amount to a classical confession. See *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App.1973). See also *Garner v. State,* 464 S.W.2d 111 (Tex.Cr.App.1971); *Easley v. State,* 493 S.W.2d 199 (Tex.Cr.App.1973); *Smith v. State,* 514 S.W.2d 749, 752 (Tex.Cr.App.1974).

In *Weaver v. State,* 43 Tex.Cr.R. 340, 65 S.W. 534 (1901), it was held proof of defendant's *refusal,* while under arrest, to go into the house and look at the body of deceased was inadmissible.

The State in the instant case would not have elicited the evidence of a verbal refusal to take a breath test while under arrest unless the State believed the same to be harmful to the appellant and inculpatory and tended to show his guilt. Even though the refusal itself did not amount to a confession, it was offered as an inference of a guilty mind. It is difficult to see any rele-

vancy in the statement of refusal other than to provide such an inference.[5]

In *Garner v. State,* supra, it was stated:

". . . in construing our confession statutes this Court has excluded any act tantamount to or in the nature of a confession and to any unwarned statement even though it lacks the essential elements of a confession. . . . "

See also *Butler v. State,* supra, and cases there cited; *Smith v. State,* supra.

Since the decisions in *Garner* and *Butler* giving to Article 38.22, supra, the same interpretation as has been applied to our earlier confession statutes, the Legislature has met and adjourned without amending the statute. It must be presumed that the Legislature approves the interpretation given to the statute by this court. See 82 C.J.S. Statutes § 316, p. 549.

I would adhere to the *Cardwell* line of cases and reverse the judgment of conviction in the instant case.

### Refusal by Silence

While the refusal in the instant case took the form of a verbal refusal to take the test, it would appear that a refusal by silence or by standing mute when offered the test would also be inadmissible. And this would be particularly true after an accused has been given warnings in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or Articles 38.22 and 15.17, Vernon's Ann.C.C.P.

In *Miranda v. Arizona,* supra, it was written:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he

---

4. In *Polk* and *Nichols,* supra, where the rule in *Cardwell* was recognized but not applied because of the defendant's action in initiating the inquiry on the sobriety tests, the decision in *Olson* was merely noted. It was not determinative of the outcome of either case.

5. See 8 J. Wigmore, Evidence, 2272–73 (McNaughton rev. ed. 1951) (failure to produce evidence gives rise to the inference that the evidence is unfavorable).

stood mute or claimed his privilege in the face of accusation." Footnote # 37, 384 U.S. at p. 468, 86 S.Ct. at p. 1625.

"Manifestly, it is intolerable to penalize an accused for remaining silent or refusing to make a statement to police authorities after being advised of his constitutional right to remain silent in the face of accusation. It is elementary that a person arrested upon a charge of crime, and thus accused thereof, has an absolute and inviolable constitutional right under the Fifth Amendment, applicable to the states by operation of the Fourteenth Amendment (*Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653), to remain silent. Indeed *Miranda* mandates, among other things, that an accused be so advised before interrogation by law enforcement officials. It would be an intolerable anomaly if an accused's exercise of his constitutional right to remain silent, of which he must be informed before any questioning by law enforcement officials concerning the offense for which he was arrested, could thus be turned against him." *Harrison v. State,* 532 S.W.2d 566, 571 (Tenn.Cr.App.1975). See also *State v. Beck,* 289 Minn. 287, 183 N.W.2d 781 (1971). Cf. *State v. Roberts,* 296 Minn. 347, 208 N.W.2d 744 (1973).

It has long been established in this State that the silence of the accused *while under arrest* normally cannot be used in evidence against him as a circumstance indicating guilt. *De Lira v. State,* 164 Tex.Cr.R. 194, 297 S.W.2d 953 (1957); 1 Branch's Ann.P.C., 2nd ed., § 87, pp. 91–92. See also *Hicks v. State,* 493 S.W.2d 833 (Tex.Cr.App.1973).

In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the question presented was whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story to the arresting officer after receiving *Miranda* warnings at the time of his arrest. There the Supreme Court concluded that the use of the defendant's post-arrest silence in this manner violated the due process clause of the Fourteenth Amendment.

The Court wrote:

"Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States v. Hale,* 422 U.S. [171], at 177, 95 S.Ct. [2133, at 2137, 45 L.Ed.2d 99]. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."

If a defendant's silence under arrest under these circumstances cannot be used to impeach the defendant at trial, surely his silence cannot be used against him in the prosecution's case in chief.

It would be highly inconsistent to say that a refusal by silence to take a chemical test cannot be used, but where the law enforcement officials compel a verbal refusal, a testimonial communication, such refusal can be shown. The rule cannot be split in two.

### Evidence of Refusal Inadmissible Under Implied Consent Statute

There exists still another reason that appellant's refusal to take a breath test was inadmissible.

Article 6701*l*–5, Vernon's Ann.C.S., is the Texas implied consent statute relating to a chemical test or other tests of the breath of any person who operates a motor vehicle upon a public highway of this State to determine the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while a person is driving a motor vehicle while under the influence of intoxicating liquor. The statute provides that if any person under arrest shall refuse to submit to a

chemical breath test upon the request of a law enforcement officer "none shall be given." The statute provides in detail, however, for a procedure whereby a person who refuses such breath test may have his license suspended for as long as a year. This is the statutory penalty for the refusal to take the breath test. The statute makes no provision that the refusal to take the test is admissible into evidence in a criminal prosecution. The statute clearly gives the arrested person the choice of taking the breath test or refusing it, though the refusal carries with it resultant consequences.

Implicit in our implied consent statute is the right to refuse to submit to a test and, a fortiori, the requirement that a choice be made between submitting to the test or suffering the consequences of such refusal. See and cf. *State v. Buckingham,* 240 N.W.2d 84 (S.D.1976).

Recently the South Dakota Supreme Court wrote:

"Certainly it is unfair to create by statute a right not to submit to a chemical test and to allow the accused to exercise that right and then in open court before a jury to permit testimony concerning that refusal which can all too easily work in the minds of the jury members to the prejudice of the defendant." *State v. Oswald,* 241 N.W.2d 566, 569 (S.D.1976).

See also *City of Brookings v. Jensen,* 243 N.W.2d 71 (S.D.1976).

In *State v. Severson,* 75 N.W.2d 316 (N.D. 1956), the Supreme Court of North Dakota wrote:

"Whether the statute implies that evidence of a refusal to take a test may be not received in evidence against a defendant is a question that is not without difficulty. We are of the opinion, however, that when the legislature granted an accused person a choice of whether he would submit to such a test, it intended that the choice should be absolutely free and not encumbered by a liability. If the fact that an accused person chooses not to take a test can be put in evidence and argued to the jury as evidence of guilt, then the statute places the defendant in a

position where willy-nilly, he must risk providing evidence for the prosecution by submitting to a test or certainly provide it by refusing to take one, although his reason for refusal may have no relation to the question of guilt or innocence."

In *People v. Hayes,* 64 Mich.App. 203, 235 N.W.2d 182, 184, the Michigan Court of Appeals in 1975 wrote:

"Further, and more importantly, the admission of a defendant's refusal to submit to an intoxication test would render nugatory the choice which the statute provides him. Under § 625a, an individual arrested for drunk driving has a choice. He can either submit to a test the results of which could create a virtually irrefutable presumption of guilt against him, or he can refuse the test and suffer the revocation. If the fact that a defendant has chosen not to submit to a test can be placed before the jury as an inference of his guilt, then he will be put in the position of having to risk providing evidence for the prosecution by submitting to the test or of certainly providing it by refusing to submit. It would be fundamentally unfair to put a defendant in such a 'damned if he does, damned if he doesn't' position. The Legislature provided a definite choice, and we cannot render a decision which would make that choice an illusory one. See e. g., *State v. Ingram,* 67 N.J.Super. 21, 169 A.2d 860 (1961); *State v. Seversen* (sic), 75 N.W.2d 316 (N.D.1956) . . . Whether the statute speaks in terms of a 'right' to refuse or a 'choice' with a resultant penalty, admitting a defendant's refusal into evidence will vitiate the ability to refuse provided to him by the statute."

In *Duckworth v. State,* 309 P.2d 1103 (Okl.Cr.1957), the Oklahoma Court of Criminal Appeals noted:

". . . the defendant's refusal to take the test was used by the state in its case in chief for purely prejudicial purposes. The accused's refusal should have ended the inquiry on the subject. It ill behooves the courts to say you have a right to refuse to do something, which

may prove either beneficial or detrimental to you, and yet, notwithstanding your right so to do, we will permit your refusal to be shown and enable the state to destroy your right and achieve indirectly by innuendo what it was prevented by law from accomplishing directly. We can conceive of no greater inconsistency." See also *Howell v. State,* 528 P.2d 1392 (Okl.Cr.1974), and *People v. Stratton,* 286 App.Div. 323, 143 N.Y.S.2d 362 (1955); *People v. Paddock,* 29 N.Y.2d 504, 323 N.Y.S.2d 976, 272 N.E.2d 486 (1971).

In my opinion we have a Texas statute which grants an absolute right to an arrested person to refuse to submit to breath testing to determine the alcoholic content of his or her blood, albeit not without certain consequences. The consequences of such refusal, however, are provided by statute and they nowhere include the admissibility of evidence of such refusal in the trial of driving while intoxicated case. The Legislature specified license revocation as the consequence of refusing to take a breath test. I cannot find the admission of a defendant's refusal to be an added consequence in the absence of a definitive legislative provision to that effect.

In the instant case the appellant did what he had an absolute statutory right to do— refuse the breath test—and evidence of that refusal should not be used to create any unfavorable inference against him. See *People v. Stratton,* supra.

### No Evidentiary Basis for Admission of Refusal?

While the foregoing reasons clearly demonstrate my reasons for concurring in the reversal of the instant case, I would note, in passing, that courts in other jurisdictions have found no evidentiary basis for the admission of a defendant's refusal. This is so because the probative value of a refusal to take a chemical test for intoxication is too low in comparison to its prejudicial effect. See *Duckworth v. State,* supra; *People v. Hayes,* supra; *Crawley v. State,* 219 Tenn. 707, 413 S.W.2d 370 (1967). As pointed out in 78 Yale Law Journal 1074 (Constitutional Limitations on the Taking of Body Evidence) evidence of a refusal to take a test for intoxication is inferior evidence and is in general unduly prejudicial to the defendant. There it was written:

"The evidence of a suspect's refusal to cooperate is less reliable than the evidence produced by a body evidence examination since a suspect may refuse to cooperate for reasons other than a fear that the examination would yield evidence of guilt. The jury, however, may often regard this deficiency in probative value and ascribe undue weight to the evidence of refusal because of an exaggerated sensitivity to the evidence as an indication that the defendant believes that he is guilty. Moreover, the jury may be tempted to convict the defendant of the substantive offense charged as punishment for the collateral and comparatively minor offense of non-compliance with an examination order. The possibility for prejudice is increased if the suspect had an innocent reason for refusing the examination but cannot personally present his explanation to the jury because for other reasons, he exercises his privilege not to testify."

### Constitutional Basis for Exclusion of Evidence of Refusal?

Since there is an adequate basis for the reversal on nonconstitutional grounds, the question of whether the admission of the verbal refusal also violated the Fifth Amendment and Article I, § 10, Texas Constitution, need not be reached. Courts in three jurisdictions, however, have excluded evidence of a refusal to take chemical test for intoxication on the ground that it is a byproduct of the compulsion to take the test and is testimonial in nature. They concluded, based on the language in *Schmerber,* that evidence of refusal constitutes compulsory self-incrimination in violation of the Fifth Amendment or state constitutional privileges. *Gay v. City of Orlando,* 202 So.2d 896 (Fla.Ct.App.1967); *Johnson v. State,* 125 Ga.App. 607, 188 S.E.2d 416 (1972); *State v. Andrews,* 297 Minn.

260, 212 N.W.2d 863 (1973). Certainly when a defendant says, "No, I will not take any test," or "Thanks, but I will refuse that test," etc., he is testifying against himself and this is clearly testimonial evidence. See and cf. *State v. Andrews,* supra.

For the reasons stated above, I concur in the reversal of the judgment of conviction.

DOUGLAS, Judge, concurring.

I concur in the result of the opinion of Judge Phillips in that the conviction must be reversed because the evidence of the refusal to take the breathalyzer test is not admissible because of the decision of the Supreme Court of the United States in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). See also *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

ROBERTS, Judge, dissenting.

This appeal presents for reconsideration the question of whether the State may initially interject evidence that the accused was offered and refused to take a breathalyzer test. It is contended that *Cardwell v. State,* 156 Tex.Cr.R. 457, 243 S.W.2d 702 (1951), and cases following it which held such evidence inadmissible, should be overruled in light of *Olson v. State,* 484 S.W.2d 756 (Tex.Cr.App.1972).

Appellant was convicted by a jury of driving while intoxicated. In his only ground of error, appellant contends that the trial court erred in admitting, over objection, testimony from the arresting officer on direct examination that appellant had refused an offer to take a breathalyzer test to determine intoxication. The same matter was also inquired of appellant on cross-examination. He relies on the long line of cases following *Cardwell v. State,* supra, in which this Court wrote:

> "The State cannot avail itself of the silence or refusal of an accused prisoner as a circumstance tending to establish his guilt."

*Olson v. State,* supra, brought *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) into effect in Texas and held the scope of the privilege against self-incrimination embodied in Art. I, Sec. 10, Texas Constitution, to be coextensive with that of the Fifth Amendment to the United States Constitution. *Olson* specifically held that there was no constitutional prerequisite of consent to subjecting an accused to a chemical test or other type of test for the purpose of obtaining evidence.[1]

It is clear that the exclusionary rule of *Cardwell v. State,* is founded not upon the breathalyzer statute, Art. 6701*l*–5, V.A. C.S., nor upon the provisions of the federal or state constitutions. *Olson v. State,* supra. Rather, the rule is based upon the Texas confession statute, Art. 38.22, V.A.C. C.P., and the evidentiary rule prohibiting admissions by silence.

The appellant's refusal to take the test amounted to a refusal to submit to the lawful exercise of statutory authority. Art. 6701*l*–5, Sec. 1, V.A.C.S. Such a refusal may take the form of an accused's holding his breath or turning his head. This is tantamount to withholding or destroying evidence. It is analogous to flight or escape, which are *non-testimonial* circumstances admissible to show an accused's guilt. Clearly, then, the *fact* of refusal, if not the actual words used, would be admissible. For this reason alone, the Supreme Court's holding in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) is distinguishable.

The case at bar, however, presents more than the mere *fact* of refusal. The appellant testified, "I was told that I was to stand and that I was about to be given a breath test. *I said no thank you.*" (Emphasis added). There was a timely objection to this line of questioning. We thus have the actual words used by appellant when he refused to submit to the administration of the test. This raises the prob-

1. See the very thorough discussion of my Brother Onion further explicating this subject matter.

**716**

lems under Art. 38.22 V.A.C.C.P., upon which the *Cardwell* line of cases has been based.

I am of the opinion that such verbal evidence of a refusal to submit does not constitute an admission or confession proscribed by said statute, even though it may be introduced against an accused as tending to show his guilt. *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App.1973) (dissenting opinion). Such a refusal is a concrete factual circumstance tending to show guilt, and should be admissible as such. Cohen, "The Case for Admitting Evidence of Refusal to Take a Breath Test," 6 Tex.Tech.L. Rev. 927 (1975).

In practical terms, it is difficult to square the opinions of the majority—that evidence of refusal to submit to a chemical test for intoxication is inadmissible—with the rule announced in *Olson v. State,* supra, that evidence of a coerced chemical test (or handwriting exemplar) is admissible. If handwriting exemplars, urine specimens, voice samples and sobriety tests are admissible despite Art. 38.22, recalcitrance in the giving of such evidence should also be admissible. To the extent that *Butler v. State,* supra; *Garner v. State,* 464 S.W.2d 111 (Tex.Cr.App.1971); *Cardwell v. State,* supra (and cases following it), would hold such non-inculpatory post-arrest statements inadmissible under Art. 38.22, they should be overruled.

It follows that evidence of appellant's refusal to submit to a breathalyzer test was admissible and the trial judge committed no error in so ruling.

Appellant's ground of error should be overruled and the judgment should be affirmed.

ODOM, J., joins in this dissent.