## CONNOR C. ELLIOTT V. STATE.

No. 24049. May 12, 1948.
Appeal Reinstated June 16, 1948.
State's Motion for Rehearing Denied October 13, 1948.

286

Hon. Thos. C. Ferguson, Judge Presiding.

*Senterfitt and Crump,* of San Saba, and *Newman and McCollum,* of Brady, for appellant.

*Roscoe Runge,* District Attorney, of Mason, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was convicted on a charge of cattle theft and his punishment assessed at confinement in the State penitentiary for a term of two years.

The notice of appeal was merely a docket entry and is not shown by the record to have been properly entered in the minutes of the trial court. Consequently, this Court has no jurisdiction of the case.

The appeal is dismissed.

### ON MOTION TO REINSTATE APPEAL.

DAVIDSON, Judge.

It now appearing that notice of appeal was properly entered in the trial court, the appeal is reinstated.

Matthews, a cattle buyer, attended an auction sale in San Saba County. He there saw seven head of cattle, which he

thought belonged to Gray, being offered for sale by and in the name of the appellant. Matthews contacted Gray, who, in turn, contacted Dietz, a representative of the Cattle Raisers Association. Gray identified the cattle as his and as having been stolen from him. Dietz and Hodges, another representative of the Cattle Raisers Association, then contacted appellant relative to his possession and sale of the cattle and openly accused him of the theft thereof.

Dietz and Hodges testified that appellant admitted to them that he had stolen the cattle. Hodges then asked appellant if he wanted to make a confession, to which appellant replied in the affirmative.

Hodges took appellant to the office of the county attorney. The county attorney gave appellant the statutory warning regarding confessions made while under arrest, and took a statement from appellant. Before completing the statement, appellant decided that he, first, wanted to see a lawyer. The county attorney advised appellant that he would not complete the taking of the statement, in the face of such request.

Appellant was delivered into the custody of the sheriff and placed in jail.

Upon the trial of the case, appellant claimed that the cattle alleged to have been stolen belonged to him; that if the cattle did, in fact, belong to Gray, the taking was the result of a mistake in identity. He denied that he had stolen the cattle and that he had admitted to Dietz and Hodges that he had stolen them.

Upon cross-examination, appellant denied that he started to make a voluntary statement to the county attorney and, in that connection, testified:

"It is not true that I came to San Saba and went into the County Attorney's office and started to make a voluntary statement about the whole transaction. I did talk to Mr. Ford on that day. I did not know him to be the County Attorney at that time. I don't think he informed me that he was the County Attorney. I don't know that Mr. Ford did anything on that day. He did write something on the typewriter."

It should be noted that appellant did not go into this matter upon his direct examination. The inquiry as to whether he did

make a voluntary statement to the county attorney arose upon cross-examination.

After appellant's denial, as above set out, the State, in rebuttal, proved by the county attorney, as follows:

"I am acquainted with the defendant, Conner C. Elliott. I did see him in my office on the 1st or 2nd day of July of this year. Mr. J. E. Hodges was there with him. It was late in the afternoon when they came in. I would say it was something like four to four thirty or right at five o'clock.

"While Mr. Elliott was making a voluntary statement to me he said, I am not trying to quote him, but he said, this is the first time that I have ever been in trouble and maybe I ought to talk to a lawyer. When he said that I immediately quit taking the statement and told them that I was not going to take his statement if he wanted to talk to a lawyer. Mr. Hodges then took him down to the sheriff's office. Of my own knowledge I don't know anything else about when a lawyer was called.

"I did administer the warning to him about making a statement. I administered the warning in its statutory form. I told him that he did not have to make any statement at all and any statement that he did make might be used in evidence against him. After receiving that warning he did make a voluntary statement to me. It was during the progress of taking a statement that he told me he thought he might better see a lawyer."

Out of the facts stated touching the making of a statement, appellant reserved three bills of exception. These complain of the cross-examination of the appellant relative to the making of a voluntary statement, which he denied, and the proof by the county attorney that a statement was begun and not finished—all because the appellant was under arrest and in custody at the time.

These bills of exception contain a certificate that appellant was under arrest at the time the statement was alleged to have been made. The trial court refused to certify to the correctness of that certificate but set forth the facts relied upon by appellant as showing that he was, in fact, under arrest at the time.

These facts show that Dietz and Hodges, as representatives of the Cattle Raisers Association, were actually investigating the alleged cattle theft and, in the course of that investigation openly accused appellant of the theft and testified that appel-

lant admitted to him his guilt. At that time, they were each dressed in shirt sleeves and wore pistols plainly visible and open to view upon their persons. Appellant appears to have been immediately taken into custody and Hodges took him to the county attorney's office after asking him if he wanted to make a confession.

Referring to the time when Hodges left with appellant to go to the county attorney's office, Dietz testified:

"At the time the officers arrested this man and left, I stayed out there with Mr. Gray and with Mr. Gray's cattle."

Hodges took appellant to the office of the county attorney and remained present while the statement was being made. After discontinuing the taking of the statement by reason of appellant's asking to see a lawyer, Hodges delivered appellant to the sheriff, who placed him in jail.

In addition to these facts, and which is perhaps the most significant of all the facts touching upon the question as to whether appellant was under arrest, is the testimony of the county attorney when he testified that before appellant made a statement he gave to him the statutory warning. If appellant was not then under arrest, no necessity existed to give him any warning; if he was, the statutory warning was necessary for the statement to be admissible. The county attorney must have considered appellant under arrest at the time, because he did give him the statutory warning.

Whether one is under arrest or in custody of an officer, within the meaning of Art. 727, C. C. P., governing the making of a confession, is not to be determined upon a strict definition of arrest or custody. The viewpoint of the accused and the impression made upon him as to whether he thought he was under arrest are to be given consideration. Rollins v. State, 126 Tex. Cr. R. 545, 73 S. W. (2d) 541; Lightfoot v. State, 117 Tex. Cr. R. 515, 35 S. W. (2d) 162.

Apparently, Dietz and the county attorney thought appellant was under arrest. Hodges had him in custody, accusing him of the crime; he never let appellant out of his custody until he delivered him to the sheriff.

Under the facts stated, the conclusion is reached that appellant was under arrest and in custody, within the meaning of Art. 727, C. C. P.

In approaching a determination of the questions here presented, it must be kept in mind that a confession made while under arrest and not in conformity with the statute and not coming within the scope of res gestae is not admissible either as original evidence or for the purpose of impeachment. Donohoe v. State, 115 Tex. Cr. R. 17, 27 S. W. (2d) 215.

Attention is also directed to the fact that at no time did the State attempt to show the contents of the statement as made to and reduced to writing by the county attorney. Whether or not appellant had therein confessed to the taking of the cattle is therefore left as an inference only, by reason of the testimony of Dietz and Hodges that he did confess to them.

Finally, then, reversible error is here claimed in the action of the State in interrogating appellant upon cross-examination as to his making a statement to the county attorney and, after his denial, in the impeachment of him by showing that he did make a statement to the county attorney, all while under arrest.

It appears that the case of Brent v. State, 89 Tex. Cr. R. 546, 232 S. W. 845, is in point. In that case the accused, upon cross-examination, was asked if, after his arrest and while in jail, (a) he had not used the telephone, (b) he did not talk over the telephone to his wife, (c) he did not talk over the telephone to one Paul Guyton, and (d) he did not talk over the telephone to some other person. To all these matters the accused registered a denial. The jailer was then, over objection, permitted to impeach the accused by testifying that he did make such telephone calls. In holding such testimony reversible error, we said:

"Under all our authorities the introduction of evidence of what was said and done by appellant while in jail and unwarned was error, and of such character as that we cannot assume to say it was harmless. The statutes of this state forbid the introductions against one accused of crime, of his confession or of any statement made by him while in custody and unwarned. The uniform decisions of this court hold that any criminating statement by an unwarned accused comes within the comprehension of the forbiddance of said statute. Likewise it has been uniformly held that evidence of such criminating statement of such unwarned accused cannot be used to impeach or contradict him in the event he became a witness in his own behalf. These are matters so well settled by the decisions of this court as to need no further discussion."

We are unable to see a material distinction in the Brent case and the instant case. In fact there is here present an inference not found in the Brent case, which is the inference that might be drawn by the jury that the appellant had, in fact, confessed his guilt in the statement made to the county attorney. As supporting the holding in the Brent case, see Spires v. State, 123 Tex. Cr. R. 357, 59 S. W. (2d) 117; Williams v. State, 126 Tex. Cr. R. 616, 73 S. W. (2d) 540; Beachem v. State, 144 Tex. Cr. R. 272, 162 S. W. (2d) 706.

In the light of the holding in the Brent case, supra, the conclusion is expressed that reversible error is here reflected in the particular discussed.

The judgment of the trial court is reversed and the cause remanded.

Opinion approved by the Court.

ON STATE'S MOTION FOR REHEARING.

KRUEGER, Judge.

In its motion for a rehearing, the state challenges the correctness of our conclusion as expressed in our original opinion wherein we held that the trial court erred in permitting the state, on cross examination of appellant, to inquire of him if he did not come to the county attorney's office and start to make a voluntary confession about the whole transaction. Appellant replied that he did not at that time know that Mr. Ford was the County Attorney; but he did talk to Mr. Ford; that he did not know that Mr. Ford did anything on that day; that he did write something on a typewriter. The state then called Mr. Ford and proved by him the facts set forth in the original opinion.

The state contends, in its motion, that appellant first went into the matter relative to his intention of making a voluntary confession; and, therefore, the state had a legal right to introduce the balance of his statement made to the county attorney. We have again examined the record but fail to find anything in the record which shows that he first introduced evidence of his appearance before the county attorney with the intention of making a voluntary confession. Appellant was under arrest and in custody of an officer, and the mere fact that he declined to make a confession was not admissible against him. See Swisher v. State, 84 S. W. 911; and Ripley v. State, 58 Tex. Cr.

R. 489 (126 S. W. 586), where many cases on the subject are cited.

It occurs to us that the state, by the evidence set forth in our original opinion, sought to impress the jury with the fact that since the appellant was taken before the county attorney for the purpose of making a voluntary confession, even though he declined to do so, he was guilty of the offense charged. It is quite obvious that this was highly prejudicial.

Believing that the case was properly disposed of on original submission, the motion for rehearing is overruled.

Opinion approved by the Court.