James Benton BASS, Appellant,

v.

The STATE of Texas, Appellee.

No. 714–84.

Court of Criminal Appeals of Texas, En Banc.

Nov. 19, 1986.

Jim T. Jordan, Odessa, for appellant.

J. Scott Henderson, Co. Atty. and Mark H. Dettman, Asst. Co. Atty., Midland, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted for the offense of driving while intoxicated and assessed a punishment of six months confinement and a fine of $500.00, both probated. In an unpublished opinion the El Paso Court of Appeals reversed appellant's conviction,

holding that the trial court erred in admitting evidence of his refusal to submit to a breathalyzer test. *Bass v. State* (Tex. App.—El Paso, No. 08–0–83–00113–CR, delivered May 2, 1984).

Recognizing that Tex.Rev.Civ.Stat.Ann., art. 6701*l*–5, § 3(g) presently allows such evidence to be admitted, see Acts 1983, 68th Leg., p. 1577, ch. 303, § 4, eff. Jan. 1, 1984, but noting that the instant proceedings all occurred prior to the effective date of that provision, the court of appeals ruled that State law applicable at the time prohibited admission of evidence of refusal. Said the court:

"The State relies exclusively upon the Supreme Court decision in *South Dakota v. Neville*, [459] U.S. [553], 74 L.Ed.2d 748, 103 S.Ct. 916 (1983). *Neville* simply provided that a South Dakota statute which authorized introduction of such evidence was not repugnant to the Fifth Amendment to the United States Constitution. The Supreme Court position in *Neville* is that introduction of such evidence is a matter of state law. The Texas proscription is founded upon state authority independent of the Fifth Amendment. *Dudley v. State*, 548 S.W.2d 706 (Tex.Cr.App.1977); *Casselberry v. State*, 631 S.W.2d 542 (Tex.App. —El Paso 1982, PDRR); Tex. Const. art. I, sec. 10; Tex.Code Crim.Pro.Ann. art. 38.22 (Vernon 1979 and Supp.1984)." [1]

At least four other courts of appeals have held that there is no independent basis in state law for excluding evidence of refusal to submit to a breath test. See *Gresset v. State*, 669 S.W.2d 748 (Tex.App.—Dallas 1983); *Ashford v. State*, 658 S.W.2d 216 (Tex.App.—Texarkana 1983); *Parks v. State*, 666 S.W.2d 597 (Tex.App.—Houston [1st] 1984). Also: *Nevarez v. State*, 671 S.W.2d 90 (Tex.App.—El Paso 1984); *Brant v. State*, 676 S.W.2d 223 (Tex.App.— El Paso 1984); *Sinast v. State*, 688 S.W.2d 631 (Tex.App.—Corpus Christi 1985). We therefore granted the State's petition for

1. Were we to hold that evidence of refusal to submit to a chemical test for intoxication was inadmissible as violative of the State Constitution it would of course be tantamount to invali-
dating that part of the 1983 amendment which expressly permits introduction of such evidence at trial.

discretionary review in this cause in order to determine whether state law, and more specifically, either Article I, § 10 of the Texas Constitution, or Article 38.22, V.A.C.C.P., or both affords an appellant greater protection vis-a-vis the admissibility of refusal evidence than does the Fifth Amendment.

Just after midnight on January 8, 1983, appellant and a female companion were traveling in separate cars from Odessa to Midland on Highway 80 when appellant's companion was pulled over by Officer Matt Andrews of the Department of Public Safety for suspicion of driving while intoxicated. As Andrews questioned his companion on the shoulder of the highway, appellant pulled up in his car and got out. Appellant, "was staggering" as he approached, and as he stood talking to Andrews' partner, Deputy Constable Buzzell, he "was swaying and very unsteady on his feet." After arresting appellant's companion and placing her in his patrol car, Andrews approached appellant and noticed a "strong odor of alcoholic beverage on his breath, ... that his eyes were bloodshot," and that "[h]is speech was very thick-tongued." When Andrews' flashlight was shined in appellant's eyes, the pupils remained dilated. Andrews testified that it appeared to him that appellant lacked the normal use of his mental and physical faculties and that in his opinion appellant had been "too intoxicated to be operating a motor vehicle."

At this point Andrews arrested appellant for driving while intoxicated and advised him of "his rights." [2] Andrews testified that "[i]n advising him of his rights, as far as being under arrest for driving while intoxicated, [he] did request that [appellant] submit to a chemical breath test." Over appellant's objection Andrews testified that after initially agreeing to take a test, appellant changed his mind and refused to submit, and did not thereafter request that any test be administered.

In his argument to the trial court that the evidence of his refusal to submit should be excluded appellant expressly eschewed any reliance on the Fifth Amendment. Instead he relied on Article 38.22, V.A.C.C.P., and "the case law and cases holding in the State of Texas that such testimony is never admissible." The principal case relied on is *Dudley v. State*, supra. For its part the State filed a trial brief arguing that under *Dudley* and *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1969), the protections of Article 38.22, supra, and of Article I, § 10, respectively, are no broader than those of the Fifth Amendment as construed in *South Dakota v. Neville*, supra. Since evidence of refusal to take a chemical breath test is not compelled, and is therefore admissible under a Fifth Amendment analysis, maintained the State, such evidence may also come in without violating State law.

We begin with an analysis of *Dudley v. State*, supra.

### Dudley v. State

The five judges on the court who decided *Dudley* were split four ways in their views of how that cause should have been disposed of. The lead opinion, authored by Judge Phillips, concluded that evidence of the defendant's refusal to submit to a breath test was inadmissible under the Fifth Amendment to the United States Constitution, and, finding that the protection afforded by Article 38.22, supra, was "substantially the same as [that of] the Fifth Amendment[,]" 548 S.W.2d at 708, held the evidence inadmissible under the statute as well. Though not purporting to decide the issue of admissibility of such evidence under Article I, § 10 of the State Constitution, Judge Phillips noted in passing that *Olson v. State*, supra, had held "that the prohibition of the Texas Constitution against the compelling of the defendant to *give evidence against himself* means the same as the prohibition in the Federal Constitution against compelling a defendant to

---

2. Appellant contends, *inter alia,* that the record fails to establish he was given his *Miranda* warnings after his arrest. The record is indeed ambiguous on this point, but as we shall develop, *post,* our disposition of the case does not turn on resolution of this contention.

*be a witness against himself."* [3] *Id.*, at 707. No other judge joined Judge Phillips' opinion, though two judges concurred in the result with opinions of their own. Two judges dissented, arguing in essence that the fact of an accused's refusal to submit to chemical testing "is analogous to flight or escape, which are *non-testimonial* circumstances admissible to show an accused's guilt." [4] *Id.*, at 715.

Presiding Judge Onion filed a concurring opinion in *Dudley* in which he argued, *inter alia*, that the Court should adhere to the line of cases begun with *Cardwell v. State*, 156 Tex.Cr.R. 457, 243 S.W.2d 702 (1951).[5] The Court in *Cardwell* had held:

"The State cannot avail itself of the silence *or refusal* of an accused prisoner as a circumstance tending to establish his guilt. See *Carter v. State*, 23 Tex.Ap. 508, 5 S.W. 128; *Elliott v. State*, 152 Tex.Cr.R. 285, 213 S.W.2d ˙833; *Sharp v. State*, 153 Tex.Cr.R. 96, 217 S.W.2d 1017."

243 S.W.2d at 704. Judge Onion found it clear that this holding derived from "the confession statute as well as the rule of evidence which forbids an accused's silence to be used against him as tending to establish guilt." *Dudley*, supra, at 711. In thus finding the holding in *Cardwell* to have derived at least in part from Article 38.22, supra, and its progenitors, Judge Onion identified a source for excluding evidence of refusal apart from the Fifth Amendment, and, for that matter, Article I, § 10. 548 S.W.2d at 714.

Reliance upon Article 38.22, supra, for authority that evidence of refusal to submit to chemical testing for intoxication, either upon Judge Phillips' view that its protection is "substantially the same as the Fifth Amendment[,]" or upon Judge Onion's view that the statute would exclude such evidence apart from operation of the Federal Constitution, under *Cardwell*, supra, is currently untenable, as we now proceed to demonstrate.

### Article 38.22

Assuming, *arguendo*, that Judge Phillips is correct that the scope of the protection against selfincrimination accorded by Article 38.22, supra, is no broader than that of the Fifth Amendment, we agree with the State that the statute would not prohibit admission of refusal evidence. This is so because, as the United States Supreme Court found in *South Dakota v. Neville*, supra, such evidence is not compelled for purposes of Fifth Amendment analysis. Not being a *compelled* communication, the appellant's refusal to take the breathalyzer test in this cause does not call into play the federal privilege against selfincrimination; hence, consistent with Judge Phillips' view, it would also be admissible under Article 38.22, supra.

Regarding Judge Onion's view that Article 38.22, supra, would prohibit admission of refusal evidence ʹirrespective of the scope of the Fifth Amendment, under *Cardwell*, supra, we observe that shortly after *Dudley* was delivered the socalled "confession" statute was amended in a critical way.

When *Dudley* was decided Article 38.22, supra, as had all its precursors, mandated that "[t]he *confession* shall not be admissible if the defendant was in jail or other place of confinement or in the custody of an officer at the time it was made, unless" certain prescribed conditions were met.[6]

---

**3.** Emphasis in the original. All other emphasis supplied by the writer of this opinion unless otherwise indicated.

**4.** Emphasis in the original.

**5.** See *Bumpass v. State*, 160 Tex.Cr.R. 423, 271 S.W.2d 953 (1954); *Jordan v. State*, 163 Tex.Cr.R. 287, 290 S.W.2d 666 (1956); *White v. State*, 164 Tex.Cr.R. 416, 299 S.W.2d 151 (1958); *Brown v. State*, 165 Tex.Cr.R. 535, 309 S.W.2d 452 (1958); *Watts v. State*, 167 Tex.Cr.R. 63, 318 S.W.2d 77 (1958); *Saunders v. State*, 172 Tex. Cr.R. 17, 353 S.W.2d 419 (1962); *Shilling v. State*, 434 S.W.2d 674 (Tex.Cr.App.1968); *Willeford v. State*, 489 S.W.2d 292 (Tex.Cr.App.1973). Cf. *Sublett v. State*, 158 Tex.Cr.R. 627, 258 S.W.2d 336 (1953).

**6.** For a comprehensive history of the metamorphosis of the confession statute up to amendment in 1977, see *Butler v. State*, 493 S.W.2d 190, 191–192 (Tex.Cr.App.1973).

Originally, Article 662 of the Old Code, and later Article 750 of the 1879 Code, allowed admission of any postarrest "confessions," written or oral, only if voluntarily made after the accused had been "cautioned." It was held under authority of the statute that evidence of an *act* by the accused while in custody which was in the nature of a confession was inadmissible if the accused was unwarned at the time. See *Nolen v. The State,* 14 Tex.App. 474 (Ct.App. 1883). After amendment in 1907, however, the statute prohibited admission of oral "confessions," regardless of whether the accused had been warned, except under very narrowly defined circumstances. Written confessions were admissible under the same terms as before, *viz,* after warning. The Court continued to hold that, e.g., "acts of the accused and even his silence while under arrest,[7] might be in the nature of confessions, and hence same would be inadmissible, unless coming under some exception to the statutory rule...." *Taylor v. State,* 118 Tex.Cr.R. 340, 42 S.W.2d 426, 427 (1931). It appears that an act or the silence of an accused was treated as tantamount to an oral confession under the amended statute, and hence evidence of acts or silence occurring any time after he was taken into custody was generally deemed inadmissible. Arguably *Cardwell,* supra, simply extended application of this statutory construction to refusal to submit to a sobriety test.

By Acts 1977, 65th Leg., p. 935, ch. 348, § 2, eff. Aug. 29, 1977, the Legislature, *inter alia,* shifted the focus of Article 38.-22, supra, from exclusion of most oral, and any unwarned written "confessions" obtained *after an accused has been taken into custody,* to exclusion only of any unwarned "statement," written or oral, "made by an accused *as a result of custodial interrogation* [.]" Undoubtedly the

legislature intended that the term "custodial interrogation" be construed consistently with its meaning under the Fifth Amendment. See Bubany, The Texas Confession Statute: Some New Wine in the Same Old Bottle, 10 Tex.Tech.L.Rev. 67, 73–76 (1978). Because "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of [the Fifth Amendment]," *McCambridge v. State,* 712 S.W.2d 499 (Tex.Cr.App.1986), quoting *South Dakota v. Neville,* 459 U.S. at 564, n. 15, 103 S.Ct. at 923, n. 15, we do not think such inquiry constitutes an "interrogation" for purposes of Article 38.22, supra. Thus, whatever argument could be made that evidence of a refusal to submit to chemical testing is inadmissible under Article 38.22, on authority of Judge Onion's concurring opinion in *Dudley,* does not survive the 1977 amendment of the statute.

■ We hold that the refusal of appellant in the instant cause to submit to the breathalyzer test did not come about as the result of "custodial interrogation" for purposes of Article 38.22, supra.[8]

### Article I, § 10

■ The court of appeals also found that refusal evidence is inadmissible under Article I, § 10 of the Texas Constitution. The Court has this day held, however, that refusal to submit to a chemical breath test for intoxication is not a *compelled* communication, and thus its admission does not violate the mandate of Article I, § 10 that an accused not be "compelled to give evidence against himself." *Thomas v. State,* 723 S.W.2d 696 (Tex.Cr.App.1986).[9]

Finding no independent state authority among those cited by the court of appeals

7. It should be remembered that admissibility of evidence of postarrest silence is a question of state constitutional dimension, as was recently shown in *Sanchez v. State,* 707 S.W.2d 575 (Tex. Cr.App.1986) (Clinton, J., concurring).

8. In view of our holding that appellant's refusal was not a result of custodial interrogation, we

find it unnecessary to resolve whether the evidence shows that Officer Andrews informed him of his *Miranda* rights prior to requesting the breath test. See n. 2, *ante.*

9. But see this writer's dissenting opinion.

to necessitate exclusion of the evidence of appellant's refusal to submit to a breath test, we reverse the judgment and remand the cause to that court for consideration of appellant's other grounds of error.

MILLER, J., dissents.

TEAGUE, Judge, dissenting.

For the reasons that I state herein, as well as the reasons I have stated in the dissenting opinions that I have filed in *Thomas v. State*, 723 S.W.2d 696 (Tex.Cr. App.1986), *Mc Ginty v. State*, 723 S.W.2d 719 (Tex.Cr.App.1986), and *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App.1986), I respectfully dissent.

This is another driving while intoxicated case where the accused, after being arrested and receiving his *Miranda* warnings,[1] when requested to do so, refused to take the chemical breath test.

The facts reflect that the appellant was arrested for the offense of driving while intoxicated. Thereafter, he was apparently given the *Miranda* warnings. He was also requested to give a chemical breath test by the arresting officer, which he eventually refused to take. The trial court admitted into evidence over objection the appellant's refusal to take the test. The El Paso Court of Appeals, relying upon its decisions of *Nevarez v. State*, 671 S.W.2d 90 (Tex.App. —El Paso 1984), and *Casselberry v. State*, 631 S.W.2d 542 (Tex.App.—El Paso 1982), in which this Court refused the State's petition for discretionary review, reversed. *Nevarez*, supra, and *Casselberry*, supra, had relied upon this Court's decisions of *Dudley v. State*, 548 S.W.2d 706 (Tex.Cr. App.1977), also see *Martinez v. State*, 548 S.W.2d 719 (Tex.Cr.App.1977); *Boney v. State*, 548 S.W.2d 730 (Tex.Cr.App.1977); *Hitt v. State*, 548 S.W.2d 732 (Tex.Cr.App. 1977); *Clinard v. State*, 548 S.W.2d 716 (Tex.Cr.App.1977), *Sutton v. State*, 548 S.W.2d 720 (Tex.Cr.App.1977), all of which

decisions the bench and the bar of this State—for almost ten years—have believed stood for the proposition that in a prosecution for driving while intoxicated, unless some exception came into play, it was error for the trial court to admit testimony that the accused had been offered and refused to take a breath test. Today, an aggressive and assertive majority of this Court "deep-sixes" that belief. It apparently does so in order that it can overcome the decision by the El Paso Court of Appeals in this cause.

Judge Clinton, the author of the aggressive and assertive majority opinion, implicitly latches onto what he stated in the dissenting opinion that he filed in *Thomas v. State*, supra, namely, "An accused has no constitutional right, however, to refuse to submit to a chemical sobriety test. *Rodriguez v. State*, 631 S.W.2d 515 (Tex.Cr. App.1982)."[2] My research to date reveals that with the exception of *Rodriguez v. State*, supra, since *Dudley et al* were decided, this Court has not been confronted with a single case on direct appeal where it was contended that a trial court erred in admitting over objection the accused's refusal to take the test. In light of the fact that *Rodriguez*, supra, only represents a two judge majority panel opinion of this Court, with Presiding Judge Onion writing the majority opinion and Judge Clinton joining him, with the undersigned dissenting without opinion, it is certainly questionable that it is as authoritative as Judge Clinton implies.

In his dissecting manner, Judge Clinton appears to find fault with what *Dudley v. State*, supra, and its progeny held, and how they have been religiously adhered to by most members of the Bench and Bar of this State. He does so because "The five judges on the court who decided *Dudley* were split four ways in their view of how that cause should have been disposed of." In light of the fact that his "authoritative"

---

1. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Rodriguez* was filed in this Court on October 2, 1979, but was not decided by a majority of a

panel of this Court until April 21, 1982. There was no motion for rehearing. The *Dudley*, supra, line of cases were actually decided in 1977.

source of *Rodriguez v. State*, supra, represents only a mere majority panel opinion of this Court, thus representing the views of only two judges of this Court, how he can implicitly state that this causes *Dudley, et al* to lose the meaning attributed to it by most of the members of the Bench and Bar escapes me.

Judge Clinton is correct, however, in advising us that the issue before this Court in this cause is "whether state law, and more specifically, either Article I, § 10 of the Texas Constitution, or Article 38.22, V.A.C. C.P., or both afford an appellant greater protection vis-a-vis the admissibility of refusal evidence than does the Fifth Amendment." (Page 689) However, he is dead wrong when he holds for the aggressive and assertive majority of this Court that "the refusal of appellant in the instant cause to submit to the breathalyzer test did not come about as the result of 'custodial interrogation' for purposes of Article 38.22, supra." (Page 691)

For the reasons I have expressed in my dissenting opinion in *Mc Ginty*, supra, I am unable to understand how any rational appellate court judge can state without any qualification that an accused, who has been arrested, placed in a police car, asked questions by the arresting officer, to which he gives responses, albeit negative ones, is not then in the grips of "custodial interrogation".

It has been stated: "The most damaging result of a refusal to submit to a chemical test is usually not the suspension or revocation of the client's driver's license but rather the effect that the fact of refusal will have on a trial. For certainly any jury will draw from a refusal the adverse inference of consciousness of guilt, i.e., that the defendant refused to submit to a chemical test because he knew the result would reflect the many drinks he had taken ..." Taylor, *Drunk Driving Defense* (1981), at page 257. Furthermore, this kind of law that permits comment upon the accused's refusal to take the test "reverses the traditional presumption of innocence...." Taylor, "Blood-Alcohol Analysis and the

Fourth Amendment," Vol. 10, No. 4, *Search and Seizure Law Report,* May, 1983.

In writing for the aggressive and assertive majority of this Court, Judge Clinton holds that refusal evidence by the accused is not protected by the provisions of Art. I, Section 10, of the Texas Constitution. I am not yet ready to concede such a point. See the dissenting opinion that I filed in *Thomas v. State*, supra. I will now express additional reasons that support my position.

Until today, the Legislature of this State and this Court has long jealously guarded the right of an accused to remain silent. This Court has consistently held that under our self-incrimination laws the receipt of evidence in a criminal trial, over objection, of a defendant's complete silence or refusal to answer questions is error. This has been on the theory that the fact that a defendant did what he had an absolute right to do cannot be used to create any unfavorable inference against him. See *Dudley* et al, supra.

To equate the taking of blood or breath from an accused to the refusal to give or take such a test is simply nonsensical. Refusal is, by definition, communication. As communication, it falls within the protective cloak of the self-incrimination clause of Art. I. Section 10, of the Texas Constitution. A statute or law which endeavors to compel such communication under penalty of having the refusal admitted in evidence against him, presumptively as evidence of consciousness of guilt, compels the accused to bear witness against himself, in violation of his self-incrimination rights, as guaranteed by the Texas Constitution.

It is apparent to me, if no one else, that the majority opinion proceeds on the non-sequitur that since submission to the test is non-testimonial, the refusal to submit is, likewise, non-testimonial. It is plain, however, that one does not follow from the other. Equally plain, refusal may be transmitted only by some form of communication or communicative act. *State v. Rodri-*

*guez*, 80 Misc.2d 1060, 364 N.Y.S.2d 786 (1975).

Given the above, how the refusal to submit to chemical or blood testing is not communicative in nature, which is what the majority holds, escapes me.

It should not be questioned that a refusal to take the test is communicative in nature rather than physical. In *State v. Jackson*, 195 Mont. 185, 637 P.2d 1 (1981), that Court correctly observed that "[e]vidence of a defendant's refusal, whether expressed verbally or by physical resistance, is relevant in its testimonial aspect as the equivalent of the statement, 'Because I fear that the test will produce evidence of my guilt, I refuse to take the test.'"

Admission of such refusal is too high a price to pay for the privilege of driving a motor vehicle on a highway.

Furthermore, but as I pointed out in the dissenting opinion that I filed in *Mc Ginty v. State*, supra, how the refusal to take the test is relevant and sufficiently probative evidence to overcome its prejudical effects in a D.W.I. case also escapes me. "[T]he fact of the defendant's refusal would be no more a relevant circumstance to establish consciousness of guilt than the fact of the arresting officer's refraining from obtaining a warrant indicates that he believed that the defendant was not intoxicated ... [[E]vidence of refusal] was simply not relevant evidence." *State v. Chavez*, 96 N.M. 313, 629 P.2d 1242 (1981). Also see *State v. Munroe*, 22 Conn.Sup. 321, 171 A.2d 419 (1961); *City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo.Sup.Ct.1976); *Crawley v. State*, 219 Tenn. 707, 413 S.W.2d 370 (1967); *State v. Sverson*, 75 N.W.2d 316 (N.D.Sup.Ct.1956); *City of Columbus v. Mullins*, 162 Ohio St. 419, 123 N.E.2d 422 (1954); *People v. Knutson*, 17 Ill.App.2d 251, 149 N.E.2d 461 (1958); *People v. Hayes*, 64 Mich.App. 203, 235 N.W.2d 182 (1975); *State v. Parker*, 16 Wash.App. 632, 558 P.2d 1361 (1976); *People v. Hayes*, 64 Mich.App. 203, 235 N.W.2d 182 (1975); *State v. Wilson*, 5 Kan.App.2d 130, 613 P.2d 384 (1980); *City of Seattle v. Boulanger*, 37 Wash.App. 357, 680 P.2d 67 (1984);

*People v. Duke*, 136 Mich.App. 798, 357 N.W.2d 775 (1948). Lastly, to admit his refusal into evidence in this instance placed the appellant in a "Catch 22" or a "damned if I do, damned if I don't position."

In this instance, the arresting officer unquestionably gave the appellant the *Miranda* warnings after which the appellant refused to take the test. He was thus given a choice by the arresting officer and he refused to take the test. Thus, the arresting officer provided the appellant with a definite choice, and we should not render the appellant's decision to refuse to take the test an illusory one. Cf. *State Department of Highways v. Beckey*, 291 Minn. 483, 192 N.W.2d 441 (1971).

Anything that is said in *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1969), about the admissibility of an accused's refusal to take a chemical breath test and such being admissible evidence against him at his trial is pure dicta because *Olson* involved the taking of hand-writing exemplars. Thus, this Court's panel opinion of *Rodriguez*, supra, which relied upon *Olson*, supra, was incorrectly decided and should be expressly overruled by the En Banc Court.

Today, it is unquestionably popular to "lock-step" with those who favor abolishing all rights which the respective Constitutions grant our people, because "it is only those who are guilty who hide behind those rights and innocent persons have no need to hide behind those rights." However, I am confident that the majority of the people of this State will not join this method of thinking and will continue to subscribe to what is expressed in the respective Constitutions that were written in 1776 and 1836. Cf. Harrington, "The Texas Bill of Rights and Civil Liberties," 17 *Texas Tech Law Review*, No. 5.

For all of the above and foregoing reasons, I respectfully dissent.