NO. 07-10-00213-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



APRIL
7, 2011

 



 

BECKY ELIZONDO, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 1
OF LUBBOCK COUNTY;

 

NO. 2009-454,835; HONORABLE LARRY B. "RUSTY" LADD, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

OPINION

 

            Appellant Becky Elizondo
appeals from her jury conviction of the offense of theft in an amount of $50 to
$500 and the resulting sentence of thirty days in the Lubbock County Jail.
Through one issue, she argues the trial court erred in failing to grant her
motion to suppress her confession. We will affirm.

Background

            On March 18, 2009, appellant and her
friend Linda walked into an Old Navy store in Lubbock.  A loss prevention officer for the store,
Mora, saw the women arrive.  He noticed
Linda was carrying a flat purse.   Mora
watched the two, and eventually saw Linda, with appellant at her side, put
items of merchandise in her purse.  He
intercepted the two after they passed the registers and walked out of the store
without paying for the items.  He asked
them to return to the store, and took them to the manager’s office, where Linda
produced the items from her purse.  

            Mora
gave appellant a document entitled “Gap Inc. Civil Demand Notice.”[1]
He asked her to read and sign it if she agreed with it.  The document contained the statement, “I,
Becky Abajo Elizondo, have admitted to the theft of
merchandise/cash valued at $65.00 from GAP INC., Store No. 6220, located at
6249 Slide Rd. I also hereby acknowledge that my detention on this date was
reasonable.”  Appellant completed the
form and signed and dated it.  Mora took
photographs of appellant and the stolen clothing, and had a store clerk print a
receipt reflecting the value of the merchandise.  

Appellant was
in the store manager’s office about an hour.   Mora
then called Lubbock police, who came to the store and arrested appellant and
Linda.  Sometime before trial, an
investigator with the district attorney’s office contacted Mora and received
from him a copy of his report that included the civil demand notice.

            Appellant
filed a motion to suppress the civil demand notice obtained by Mora.  The trial court heard the motion at the
beginning of trial.  Mora testified at
the hearing.  The civil demand notice,
the photographs, and the receipt were received as evidence at the suppression
hearing.  The trial court denied
appellant’s motion to suppress and made findings of fact and conclusions of law
on the record.  The case proceeded to
trial and appellant was found guilty and sentenced as noted.  This appeal followed.

Analysis

Through her
sole issue, appellant argues the trial court erred in failing to grant her
motion to suppress her confession because it was obtained in violation of the
Fifth and Fourteenth Amendments to the United States Constitution, Article I,
Section 10 of the Texas Constitution and article
38.22 of the Texas Code of Criminal Procedure. U.S. Const. amends. V, XIV; Tex. Const. art. 1, § 10; Tex.
Code Crim. Proc. Ann. art. 38.22 (West 2010).

Applicable Law

A
trial court's ruling on a motion to suppress a confession
is reviewed on an abuse of discretion standard. Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether
the trial court abused its discretion we give "almost total deference to a
trial court's determination of the historical facts" and review
the court's application of the law to the facts de novo. Guzman v. State, 955
S.W.2d 85, 88-89 (Tex.Crim.App. 1997). If the issue involves
the credibility of a witness, such that the demeanor of the witness is
important, then greater deference will be given to the trial court's ruling on
that issue. Guzman, 955
S.W.2d at 87. In a motion to suppress hearing, the
trial court is the sole trier of fact and judge of
the credibility of the witnesses and the weight to be given to their testimony.
State
v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Accordingly, the trial
court may believe or disbelieve all or any part of a witness's testimony, even
if that testimony is not controverted. Id. We
will uphold the trial court's ruling on a motion to suppress
if that ruling was supported by the record and was correct under any theory of law applicable to the case. Id. at 856.

As
here, when the trial court makes findings of fact and
conclusions of law with its ruling on a motion to suppress,
an appellate court does not engage in its own factual review,
but determines only whether the record supports the trial court's fact findings. Romero
v. State,
800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Unless the trial court
abused its discretion by making a finding not supported
by the record, we will defer to the trial court's fact findings
and not disturb the findings on appeal. Cantu
v. State,
817 S.W.2d 74, 77 (Tex.Crim.App. 1991). On appellate review, we address only the question of whether the trial
court properly applied the law to the facts. Romero, 800
S.W.2d at 543.

Although appellant’s stated issue includes references to the
United States and Texas constitutions, her argument focuses on the requirements
of article 38.22 of the Texas Code of Criminal Procedure.  Her argument is that the store loss
prevention officer Mora was acting as an agent of the State when he obtained
her signature on the civil demand notice, and article 38.22, § 2 precluded its
admission as evidence against her.  Article
38.22 makes inadmissible in criminal proceedings a written statement resulting
from custodial interrogation unless the statement contains the statutory Miranda[2]
warnings.  Tex.
Code Crim. Proc. Ann. art. 38.22, § 2 (West 2010); Oriji v. State, 150 S.W.3d 833, 836 (Tex.App.—Houston
[14th Dist.] 2004, pet. ref’d).     

The
term "custodial interrogation" in article 38.22 is to be construed consistently with its meaning under the Fifth Amendment to the
United States Constitution. Bass v. State, 723 S.W.2d 687, 690-91 (Tex.Crim.App. 1986). In Miranda, the United States Supreme Court defined custodial
interrogation as "questioning initiated by law enforcement officers after a person has been taken into
custody or otherwise deprived of his freedom of action in any significant
way." Miranda, 384 U.S. at 444; Escamilla v. State, 143 S.W.3d 814, 824-25
(Tex.Crim.App. 2004); Paez v. State, 681 S.W.2d 34, 36-37 (Tex.Crim.App. 1984) (holding article 38.22 does not apply to
non-law enforcement personnel who are not government agents). Accordingly, the "safeguards attendant to custodial interrogation do
not come into play unless the person to whom the statements are made is acting
as an agent of law enforcement pursuant to a police practice." Macias v. State, 733 S.W.2d 192, 195 (Tex.Crim.App. 1987); Oriji, 150 S.W.3d at 837.  Statements made by the accused that do not
stem from a custodial interrogation are admissible under article 38.22. Tex.
Code Crim. Proc. Ann. art. 38.22, § 5 (West
2010).

Private
citizens, even security guards, ordinarily are not
regarded as law enforcement officers and thus cannot engage in custodial
interrogation under article 38.22.  Oriji, 150 S.W.3d
at 836, citing Ortiz v. State, 727
S.W.3d 37, 38-39 (Tex.App.—San Antonio 1987, pet. ref’d).  But a
private citizen may act as an agent of law enforcement officers so as to become
bound by the restrictions of article 38.22. 
Wilkerson v. State, 173 S.W.3d
521, 529-30 (Tex.Crim.App. 2005) (person, “whether
CPS caseworker, teacher, preacher, probation officer, or mere family friend”
proven to be working for or on behalf of the police by interrogating another in
custody, “is bound by all constitutional and statutory confession rules, including
Miranda and Article 38.22”).[3]  

In
this context, the term “agency” reflects a consensual relationship existing
between two persons or parties where one of them is acting for or on behalf of
the other.  Wilkerson, 173 S.W.3d 529.  The law does not presume an agency
relationship, and the person alleging its existence has the burden of proving
it.  Id.

Oriji involved facts similar
to those at bar.  The defendant gave a written statement
admitting theft to a Foley’s Department Store loss prevention officer. 150 S.W.3d at 835.  After
her motion to suppress the statement was denied in her subsequent prosecution
for theft, the defendant argued on appeal that article 38.22 required Miranda warnings even for statements
taken by private store security personnel. 
Rejecting her argument, the court found no evidence that any of the
Foley’s employees were agents of law enforcement pursuant to a police practice
when they obtained the statement. Id. at 837.  The court said the statement was not the
result of custodial interrogation because the Foley’s loss prevention officer
was not acting at the request of police officers to elicit incriminating
information from the defendant.  Id. at 836.  If further found law enforcement officers
“did not initiate, know of, or acquiesce in” the store employees’ efforts to
obtain the defendant’s statement, and found the store employees “obtained the
statement to further the store’s needs in preventing theft, not for law
enforcement purposes.”  Accordingly, the
court found, the defendant’s written statement to the store employees was not
inadmissible under article 38.22.  Id. at 837.

            Appellant
attempts to distinguish Oriji, and argues that here, police and the
district attorney were aware of the practices of Old Navy and other retailers
to obtain written admissions from shoplifters without providing Miranda warnings and that prosecutors
repeatedly made use of them as evidence in theft prosecutions.[4]  Appellant’s argument focuses on the
relationship between law enforcement authorities and Mora.  See
Wilkerson, 173 S.W.3d at 530 (courts reviewing asserted agency relationship
should first examine that between police and the asserted agent).

The
trial court’s findings included one reading:  “The District Attorney’s Office is aware of the practice of
obtaining civil demand notices and sent their investigator to Old Navy to
acquire the document before trial.”  The
record supports the finding, but we agree with the trial court it does not lead
to a conclusion Mora was acting as the agent of law enforcement when he
obtained the civil demand notice from appellant.

Neither
the police nor the district attorney’s office was aware of Mora’s conversation
with appellant until after it was completed and they were not involved in
Mora’s investigation in any way.  See Oriji, 150
S.W.3d at 837; Franklin v. State,
No.01-05-01129-CR, 2007 Tex.App. LEXIS 2675,  at * 16 (Tex.App.—Houston [1st Dist.] April
5, 2007, pet. ref’d)
(mem. op., not designated for publication) (finding
one conducting search not acting as government agent, under Fourth Amendment
analysis).  No evidence indicates Mora or
his employer had any agreement with or received instructions from any
government official regarding his questioning of appellant.  See Manns v. State, 122 S.W.3d 171, 183-84 (Tex.Crim.App. 2003) (under Sixth Amendment analysis, to
qualify as government agent, informant must at least have some sort of
agreement with, or act under instructions from, government official); Macias, 733 S.W.2d at 195 (informant not
acting as agent because, inter alia,
he was never asked to question the defendant or to report his discoveries to
anyone). Nor is there any evidence showing police were present during the interview,
provided Mora with the questions to ask appellant, or provided implicit or
explicit instructions to get certain information from her.  Wilkerson,
173 S.W.3d at 530. 
The record does not reflect a relationship between Mora and law
enforcement authorities by which the authorities were “using” Mora for their
own purposes.  Id.  Said another way, Mora
did not obtain appellant’s statement “pursuant to a police practice." Macias, 733 S.W.2d at 195; see Vanegas v. State, No. 02-08-0356-CR,
2009 Tex.App. LEXIS 7907, at *32-33
(Tex.App.—Fort Worth Oct. 8, 2009, no pet.) (mem. op., not designated for publication) (court found no evidence to indicate civilian “in cahoots”
with law enforcement); Hines v. State,
No. 14-04-01124-CR, 2006 Tex.App. LEXIS
3256 (Tex.App.—Houston [14th Dist.]
April 13, 2006, no pet.) (mem.
op., not designated for publication) (law enforcement
officers did not initiate, know of, or acquiesce in Wal-Mart employees’ efforts
to obtain statement from defendant).

We cannot
agree the general awareness of police or prosecutors that retailers take non-Mirandized
statements from shoplifters, even if accompanied by a common practice to obtain
and introduce the statements at trial, renders the store employees the agents
of law enforcement when they take the statements.  The government’s
willing acceptance of information provided through selfish motives by an inmate
informant did not make the informant the government’s agent under the Sixth
Amendment in Manns,
122 S.W.3d at 189, and the same is true here. 
As with the selfishly-motivated inmate, the element missing is the
instruction or request from the government. 
See id. at
183-84.  That the State has come to
expect such cooperation from retailers does not change the result.  See id.
at 184-86.

Under
the analysis in Wilkerson, we
secondly look at the record concerning Mora’s actions and perceptions.  173 S.W.3d at 530.  This factor in the analysis examines the
asserted government agent’s reasons for taking action and the goals of the
actions.  It leads to the question
whether Mora believed he was acting as an agent of law enforcement.  Id.  While Mora testified he called police
immediately after speaking with appellant, this action is insufficient to make
him an agent of police.  Id. at 533.  

Mora’s actions with regard to appellant were
required by his employment.  He testified
Gap, Inc. had a written policy requiring that a civil demand notice be
completed any time the prevention officer had contact with persons committing
theft in their stores.  Mora said if the
suspect refuses to sign the notice he would note the refusal on the completed
notice, but said he gets a signed demand notice 99% of the time.[5]  He testified the store keeps these documents
“for our record” but would turn them over to the police or the district
attorney on request.[6]  

Mora
stated the purpose of obtaining the signed civil demand notice is to “seek
punitive damages” or “monetary damages.” 
He also acknowledged Gap, Inc.’s policy manual states that other
purposes include maintaining “a good rapport” with law enforcement, preventing
“defense attorneys” from discrediting the store employee’s testimony, and
helping prosecutors obtain convictions.

The
evidence thus shows that Mora, as an Old Navy loss prevention officer, acted
with mixed motives when he obtained appellant’s signature on the civil demand
notice.  The signed notice served the
store’s purposes of facilitating the return of its merchandise and protecting
it from liability for its detention of appellant, while providing a basis for
any civil action the store might pursue. 


That
the store voluntarily provided to police and to the District Attorney the
incriminating information it had obtained from appellant does not alone
distinguish it from any other crime victim who cooperates with
authorities.  But Mora’s testimony and
the retailer’s policy manual make clear that obtaining a shoplifter’s signature
on the notice also served the store’s purpose of “helping prosecutors obtain
convictions.”  In Wilkerson, the Court of Criminal Appeals posed the question, “Were
the questions [to the defendant] aimed at gaining information and evidence for
a criminal prosecution, or were they related to some other goal?”   Wilkerson,
173 S.W.3d at 530. 
Here, the answers are “yes, and yes.” 
Given this evidence, the trial court reasonably could have concluded
that Mora did not believe he was acting as an agent of law enforcement, but was
serving his employer’s interests, even if those interests included facilitating
the criminal prosecution of shoplifters. 
Old Navy’s motive to aid in the prosecution of shoplifters does not make
it the State’s agent when it obtains statements later provided to
prosecutors.  

Lastly,
we examine the record for evidence of appellant’s perceptions of the
encounter.  Appellant did not testify so
we have no direct evidence whether she believed she was talking to someone
cloaked with the authority of law enforcement. 
We thus consider the likely beliefs of a reasonable person in
appellant’s position. Wilkerson, 173 S.W.3d at 530-31.  Mora was not in uniform[7]
and said he identified himself to appellant and Linda as a loss prevention
officer for the store.  He testified he
stopped the women outside the store, told them he needed to “talk to them about
the stuff in the purse,” and “asked them to step back in the store.”  

Appellant
signed the civil demand notice stating her detention by Mora was reasonable,
and she does not argue the interview was so menacing as to intimidate her into
making a false statement.  Id.;
see In re Deborah C., 635 P.2d 446 (Cal. 1981) (discussing lesser risks of
coercive atmosphere in questioning by store detectives).  A female store manager was with appellant and
Mora in the store office during their encounter.  The evidence supports a conclusion a
reasonable person in appellant’s position would have believed Mora was exactly
what he said, a store loss prevention officer, not an agent of law
enforcement.  Id.

As
noted, custodial interrogation under Miranda
is that initiated by law enforcement officers. 
Miranda, 384 U.S. at 444.  Our ultimate inquiry here is whether Mora was
acting as an “instrumentality” or “conduit” for the police or prosecution when
he obtained appellant’s signature on the civil demand notice.  Wilkerson,
173 S.W.3d at 531. 
The trial court concluded he was not, and the record supports the trial
court’s conclusion.  Accordingly, we
resolve appellant’s sole issue against her and affirm the judgment of the trial
court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Publish.

 











[1]
Appellant’s brief explains that
Old Navy stores are affiliated with Gap, Inc. 





[2] Miranda v. Arizona, 384 U.S. 436, 444,
86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). 





[3]
See Estelle v. Smith, 451 U.S. 454, 68
L.Ed.2d 359, 101 S. Ct. 1866 (1981) (Miranda
applied to custodial statements of defendant to psychiatrist appointed by
court to determine mental competency, when psychiatrist testified for the State
during punishment phase). 





[4]
Appellant also contends the evidence she was
held in the store manager’s office for an hour requires the conclusion her
interrogation by Mora was custodial. Because we agree with the trial court that
Mora was not acting as an agent of law enforcement officers, we do not address
the circumstances of appellant’s detention.

 





[5]
Mora said that during his
almost three years at Old Navy he had never mistakenly accused a customer of
shoplifting. 





[6] Mora also testified he showed his
report, including the completed civil demand notice, to police officers when
they arrived at the store in response to his call. 





[7]
Mora testified he is not a
peace officer.  He indicated he wears
“T-shirt, jeans, tennis shoes.”